## WM. J. LaRUE v. WM. L. GILBERT, *et al.*

HOMESTEAD RIGHTS, *of Debtor and Family, Superior to rights of General Creditors.* A. and wife executed a mortgage to G. on their homestead, and on other real estate. Subsequently L. obtained a judgment against A. After A.'s death, his wife and children continued to occupy the homestead. G. foreclosed his mortgage, and in the decree, with his consent, it was ordered that the real estate other than the homestead be first sold. L., who was a party to the foreclosure proceedings, objected, and insisted that the homestead be first sold. *Held*, That there was no error in the order, and that the equities of the family of the mortgagor in the homestead were superior to the claims of the judgment-creditor.

### Error from Coffey District Court.

PREVIOUS to April 1873, Allen Crocker was indebted to *LaRue*, and an action was pending in favor of *LaRue* upon his claims, and judgment was given therein against Crocker,

17th May 1873, for $1,752.88. April 17th 1873, Crocker and wife executed their mortgage on 300 acres of land to and in favor of *Henry Gay*, to secure the sum of $2,500 then due and owing by Crocker to the firm of *Gilbert & Gay*. November 17th 1873, said Crocker and wife, sold and conveyed to Geo. W. Welch by quitclaim deed 160 acres of the mortgaged premises. In February 1874, Crocker died. For several years before his death, and at that time, Crocker resided with his family on that portion of the mortgaged premises (140 acres) not sold to Welch, and claimed said 140 acres as his homestead. Since his decease, his widow and children still reside on said land, and claim it as a homestead. In October 1875, *Gilbert & Gay* commenced an action against the administrator, widow, and heirs of Crocker, to foreclose the mortgage given to *Gay* by Crocker and wife. *LaRue* was joined as a defendant by reason of his judgment-lien on that part of the mortgaged premises sold to Welch. He answered, setting up the foregoing facts, and asked that *Gilbert & Gay* be ordered and decreed to proceed first against the 140 acres occupied by the family of Crocker as a homestead before proceeding against the 160 acres sold to Welch, and on which his (*LaRue's*) judgment was a lien. His motion was denied. The case was tried at the December Term 1875. The amount found due *Gilbert & Gay* from Crocker's estate was $3,060. A decree was entered, the plaintiffs consenting, that the 160 acres quitclaimed to Welch be appraised as one tract, and the homestead tract of 140 acres be appraised separately, and that the former tract be first offered for sale and sold to satisfy said mortgage-debt, the surplus if any to be paid to *LaRue* on his judgment; but if it should fail to bring a sum sufficient to pay the mortgage-debt and costs, that then the homestead tract should be sold for such deficiency, and the surplus if any to be paid to the widow and other heirs of Crocker. *LaRue* appealed, and he brings the case here on error.

*Wm. L. McConnell*, for plaintiff in error.
*Gillett & Forde*, for defendants in error.

The opinion of the court was delivered by

BREWER, J.: The controversy in this case grows out of the same facts as in the case of *Colby v. Crocker*, 17 Kas. 527, and which are fully stated in the opinion filed therein. Gilbert and Gay foreclosed their mortgage, and in the decree, with their consent, it was ordered that the property other than the homestead be first sold. To this LaRue, the administrator of the estate of the mortgagor, and holder of a judgment rendered against the mortgagor in his lifetime, and which was a lien subsequent to the mortgage upon the property other than the homestead, objected, and insisted that the order should be for the sale of the homestead first. We held in that case that an unsecured creditor had no superior equities over the family of the deceased mortgagor, which was continuing to occupy the homestead, and that, therefore, the mortgagee would not be required to exhaust his security in the homestead before touching the other property mortgaged. Does the holder of a judgment-lien stand in any better condition? Are his equities paramount to the homestead right? We think not. The same reasoning which led to the decision in that case, compels an affirmance of the judgment here. It is useless to restate it. The preservation of the homestead is, under the policy of our law, considered of more importance than the payment of debts. That is what a homestead means, exemption from debts. It is not so much for the debtor, as for the debtor's family. And the family of the debtor have in this respect equities superior to the creditor. In giving a mortgage on the homestead, the debtor waives this homestead right, but only to the mortgagee, and does not thereby open the door to other creditors, or increase their equities. The case of *Chapman v. Lester*, 12 Kas. 595, cited by counsel for plaintiff in error, does not conflict with these views. In that we held that a mortgagee, holding a mortgage on both homestead and other property, might release the latter and still maintain his lien on the former. Both kinds of property were given as security,

without any express preference of the one over the other, and we held that nothing was to be interpolated into the contract, no implied agreement to treat the outside property as the primary, and the homestead as only secondary security. But this was between the mortgagee and mortgagor, and the latter by giving the mortgage had waived his homestead-rights as against the mortgagee. We closed the opinion however by a recognition of the right of a court in foreclosure proceedings to direct that the homestead be the last property offered for sale.

The judgment will be affirmed.

All the Justices concurring.