FRANK SPROUL, *et al.*, V. THE ATCHISON NATIONAL BANK, *et al.*

1. CONVEYANCE BY HUSBAND TO WIFE; *Mortgage of Homestead; Equity.* A husband may convey real estate directly to his wife, and the conveyance will be upheld as valid, so far as it is equitable to uphold the same. Thus, where a husband owed money for a certain piece of land (not his homestead), and for the purpose of procuring money to pay on said land he and his wife executed two mortgages on their homestead, but before the wife would sign the second mortgage the husband was required to and did enter into a parol agreement with his wife that he would deed to her said land (not the homestead), and said money was thus raised and paid on said land, and afterward, in fulfillment of said agreement, the husband deeded said land to his wife, and all of this was done as a security for the protection of the homestead against said mortgages, *held*, that the deed will be upheld as valid to the extent of making the land conveyed by it a security for the payment of said second mortgage, and this notwithstanding the fact that the husband at the time he made said agreement and said deed owed other debts, which are still unpaid; and the creditors are now seeking in this action to have said deed set aside and held invalid. And further, *held*, that the incumbering of the homestead, by the wife's executing said second mortgage, was a sufficient consideration on her part for said parol agreement and said deed, and that after said parol agreement was fully executed and fulfilled by the execution of said deed, the statute of "frauds and perjuries," relating to parol agreements concerning lands, had no application.

2. AGREEMENT AND MORTGAGE, *Valid; Sec. 9 of Art. 15 of Constitution, Construed.* Where a husband and wife have mortgaged their homestead to secure the payment of a debt, and afterward in good faith execute a second mortgage on another piece of land to secure the same debt, and in consideration therefor take from the mortgagee a written agreement that if he is compelled to resort to judicial proceedings to procure payment of his claim, he will first exhaust the other land before proceeding against the homestead, *held*, that such agreement and said second mortgage are valid, and this notwithstanding the fact that the mortgagor owed other debts at the time he executed said second mortgage, which debts are still unpaid, and the creditors are now seeking in this action to have said agreement and said second mortgage held to be invalid. And further, *held*, that under the constitution and statutes of Kansas, it is not illegal or fraudulent to hold property in a homestead exempt from the claims of general creditors; and the right of the homestead occupants to so hold such property is paramount to any right of any general creditor. Equity, therefore, as guided and directed by the constitution and statutes of this state, favors the protection of the homestead from the

claims of creditors; and generally, whatever is done in good faith for the protection of the homestead from creditors, is not looked upon as a fraud or as illegal, but is looked upon as a proper and legitimate transaction.

3. ——— The rights and priorities of the various parties in this case determined and stated, in the opinion.

## Error from Doniphan District Court.

ACTION brought by the *Atchison National Bank* against *Frank Sproul* and five others, to subject certain land situated in Doniphan county to the payment of a certain judgment rendered in favor of the *Bank*, and against *Sproul*. The facts are substantially stated in the opinion. Trial by the court, at the December Term, 1877, and findings and judgment for the plaintiff. New trial denied, and the defendants bring the case to this court.

*W. D. Webb*, for Frank Sproul, Virginia F. Sproul and James M. Hawley.

*Perry & Armstrong*, for Tuthill, administratrix.

*W. W. Guthrie*, and *T. M. Pierce*, for the Bank, and *W. W. Guthrie*, and *B. R. Vineyard*, for Hoagland.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by the Atchison National Bank against Frank Sproul and others, to subject certain land situated in section 15, township 4, range 21, in Doniphan county, Kansas, to the payment of a certain judgment rendered in favor of the bank and against Sproul. The facts of the case are substantially as follows: In 1871, Sproul purchased said land on credit. When he got a deed for it is not shown, nor is it material. Afterward, he created certain debts in favor of others and against himself, as follows:

1. On April 1, 1872, one to Horatio Tuthill, for $1,000. This debt was created for $1,000 borrowed by Sproul of Tuthill, with which to partially pay for said land. There is now due on said debt $1,385.

2. On October 16, 1873, one to some person for some amount, on which debt Rosa Lenker, guardian of Edward Hammill, afterward obtained a judgment for some amount, on which judgment $209.90 was due at the time of the trial of this case.

3. On January 6, 1874, as surety for Thomas L. Chilton, one to George T. Hoagland for some amount, on which debt judgment was afterward rendered in favor of Hoagland, and against Chilton and Sproul, for $2,800 and costs, on which judgment there is still due $2,262.95, and costs.

4. On May 20, 1874, one to James M. Hawley, for $1,200. This debt was also created for money borrowed by Sproul with which to partially pay for said land in section 15. There is now due on said debt $1,510.

5. On March 20, 1875, one to some person for some amount, on which debt the Atchison National Bank obtained a judgment against Sproul for $195.85 debt, and $15 attorney's fees and $8 costs. There is now due on said judgment $277.80.

The debts to Tuthill and Hawley were respectively secured by mortgages executed by Sproul and wife, Virginia F. Sproul, on their homestead situated in section 10 of said township and range. The title to the homestead was in Sproul. Before Mrs. Sproul would sign the Hawley mortgage, her husband had to enter into an agreement with her that he would deed to her the said land in section 15. This agreement was in parol. Afterward, and on May 29, 1875, Sproul, in fulfillment of his said agreement with his wife, deeded to her the said land in section 15, and on June 12, 1875, the deed was duly recorded. Afterward, and on August 30, 1875, Sproul and wife voluntarily executed a mortgage to Hawley on a portion of said land in section 15, as an additional security for the Hawley debt, and delivered it to Hawley, but upon the express condition and consideration, to which Hawley agreed in writing, that if ever Hawley should be compelled to resort to legal proceedings to collect his claim, he would first exhaust said land in section 15 before

proceeding against the homestead of the Sprouls. This second mortgage was recorded, September 4, 1875. On August 31, 1875, Sproul and wife executed a similar mortgage to Tuthill, on another portion of said land in section 15, as additional security for the Tuthill debt, and delivered the mortgage upon a like written agreement from Tuthill, that he would exhaust the land in section 15 before proceeding against Sproul's homestead. _This mortgage was also recorded on September 4, 1875. The said bank judgment was rendered before a justice of the peace on August 30, 1875, and a transcript thereof was filed in the office of the clerk of the district court on September 2, 1875. The Hoagland judgment was rendered in the district court on October 1, 1875. The Lenker judgment was rendered by a justice of the peace on November 8, 1875, and a transcript thereof was filed in the office of the clerk of the district court on November 11, 1875.

This case was tried by the court below without a jury, and the court held, that as against the bank judgment, the Hoagland judgment, and the Lenker judgment, the deed from Sproul to his wife, and the mortgages from Sproul and wife to Tuthill and Hawley (on said land in section 15) were void and of no effect. The questions, therefore, for us now to consider are, whether said deed and said mortgages were and are really void, as they were held to be by the court below.

We suppose that a husband may convey real estate directly to his wife, and the conveyance will be upheld as valid so far as it is equitable to uphold the same. (*Ogden v. Walters*, 12 Kas. 290, and cases there cited; *Faddis v. Woollomes*, 10 Kas. 56, 57; *Going v. Orns*, 8 Kas. 85, 88, and cases there cited; *Sherman v. Hogland*, 54 Ind. 578, et seq., and cases there cited. See, also, *Tennison v. Tennison*, 46 Mo. 77; *Wallingsford v. Allen*, 10 Pet. 583, 594; *Beard v. Dedolph*, 29 Wis. 136.) The present question, then, is whether equity will uphold the deed of conveyance from Sproul to his wife, and if so, to

1. Conveyance by husband to wife; mortgage of homestead; equity.

what extent. At the time that Sproul deeded this land to his wife, the land was free and clear from all incumbrances, and was subject to sale and conveyance, and Sproul deeded it to his wife in fulfillment of a previous agreement that he would do so. But it is urged that the agreement was void because it was in parol; that there was no sufficient consideration for either it or the deed, and therefore that the conveyance was a mere "gift," and that it (the conveyance) had the effect to hinder, delay and defraud creditors, and was therefore void under the statute relating to "frauds and perjuries." As the agreement was in parol, it is claimed that it was void under the sixth section of the said act relating to "frauds and perjuries." (Gen. Stat. 505.) But even if the agreement was void when made, still it was afterward fully executed and fulfilled, and therefore the statute would not any longer apply, and cannot now affect its validity, or the validity of the deed founded thereon. Hence, so far as this statute is concerned, the deed must be held valid.

It is also claimed, that as said conveyance was a "gift," it was void under § 2 of said act. (Gen. Stat. 504.) Said conveyance, however, was not a "gift," and neither was it "made with the *intent* to hinder, delay or defraud creditors," as it must have been under that section in order to be void. The conveyance was for a sufficient consideration, and was for a meritorious purpose. It was made as a security for the protection of Mrs. Sproul's homestead. With reference to the consideration, we would say that any loss to Mrs. Sproul, or any gain to Sproul, or to any one designated by him, would be a sufficient consideration for the agreement and for the conveyance. Now with reference to the loss and gain: Mrs. Sproul incumbered her homestead to the extent of $1,200 (not considering Tuthill's mortgage) subjecting it, upon a contingency, to be sold away from her, and herself and family to be driven from the premises, houseless and homeless. This was certainly a sufficient consideration for said agreement, and for the deed. Besides, Sproul, by means of her signature to

the mortgage, got his $1,200 with which to pay one of his debts, and Hawley, the mortgagee, got his mortgage, insuring a repayment of the $1,200, with interest.

With reference to the "intent to hinder, delay or defraud creditors," there was no such intent. Sproul's intention was to get money with which to pay one of his creditors; Mrs. Sproul's intention was to help her husband get the money, and at the same time to protect her homestead; and Hawley's intention was to loan his money on interest, and with *good security*. Mrs. Sproul alleged in her answer, that the consideration for said deed and for the previous agreement was her signatures to the Tuthill and Hawley mortgages, and the whole case tends to show that such was the fact, and that she procured said agreement and deed merely as securities for the protection of her homestead interests. Without her signatures to said mortgages, they would have been void, but with these, they were valid incumbrances upon her homestead. Now, while we think that equity in connection with our statutes, requires that said deed should be held to be a valid instrument in some respects, yet we do not think that equity requires that it should be held to be an absolute and unconditional conveyance of the entire estate in said land from Sproul to his wife. Indeed, we think that all that equity will require in this case is, that the deed shall be held to be a valid security to Mrs. Sproul for the protection of the homestead against the Hawley mortgage. It was executed in consideration of Mrs. Sproul's signing said mortgage, and for no other consideration. It might be claimed with some show of reason, however, that said deed should be held to be a valid security to Mrs. Sproul, to protect her homestead against both the Tuthill and the Hawley mortgages. These mortgages were both executed by Sproul and wife for the purpose of procuring money to pay for the land conveyed by Sproul by said deed to his wife, and it would seem that his wife ought to be able to use this land by a sale thereof, or by mortgage, to procure money to pay off both these mortgages on her homestead. It was these mortgages on Mrs. Sproul's

homestead concerning which she had fears; and it was these mortgages against which she afterward attempted to further protect her homestead by executing said second mortgages to Tuthill and Hawley on other land (the said land in section 15 which her husband had previously conveyed to her by the execution of said deed). And these second mortgages we also think are valid. And we think it makes no difference whether Tuthill and Hawley, as well as the Sprouls, had knowledge of Sproul's financial circumstances and condition, or not. There was no intention on the part of any of the parties to defraud creditors.

2. Agreement and mortgage, valid; sec. 9 of art. 15 of constitution, construed.

The Sprouls wished to relieve their homestead from the mortgage on it, and Tuthill and Hawley wished to get additional security for their respective claims; and to relieve the homestead by using or incumbering other property is not illegal or fraudulent in Kansas, although the holders of the homestead may at the time be greatly involved in debt. As throwing light upon this proposition, see *Monroe v. May,* 9 Kas. 466; *Hixon v. George,* 18 Kas. 253; *Colby v. Crocker,* 17 Kas. 527; *LaRue v. Gilbert,* 18 Kas. 220. Under the constitution and statutes of this state, it is not illegal or fraudulent to hold property in a homestead exempt from the claims of general creditors; and the right of the homestead occupants to so hold such property, is paramount to any right of any general creditor. (Const., art. 15, § 9; Gen. Stat. 392, 473.) Equity, therefore, as guided and directed by the constitution and statutes of this state, favors the protection of the homestead from the claims of creditors. And generally, whatever is done in good faith for the protection of the homestead from creditors, is not looked upon as a fraud or as illegal, but is looked upon as a proper and legitimate transaction.

It will be noticed that the Hoagland and Lenker judgments were not rendered until after these second mortgages to Tuthill and Hawley were executed. Hence, even if the deed from Sproul to his wife were void, still Tuthill and Hawley would have mortgage liens on said land in section 15 prior and paramount to the judgment liens of Hoagland and

Lenker. If the title to said land in section 15 was not in Mrs. Sproul when said second mortgages were executed, then it was in Sproul; in either case they had the right jointly to mortgage it to protect their joint homestead. Therefore, in either case, said second mortgages were valid as against the Hoagland and Lenker judgments, and prior thereto.

In this connection we have expressed no opinion with ref-·erence to the priority or subsequence of the bank judgment. We shall now, however, proceed to state our opinion with reference to the priorities and subsequences of the rights of :all the parties. This will have reference, however, only to the land in section 15.

1. Mrs. Sproul has the right to have the Hawley mortgage first satisfied from the proceeds of the entire tract of said land in section 15, for the deed from Sproul to her is valid to that extent. This right dates from June 12, 1875, the ·day when said deed was recorded.

2. The bank comes next in priority. Its right dates from September 2, 1875, the day when the transcript of its judgment was filed in the office of the clerk of the district court.

3. Tuthill comes next. Her right dates from September 4, 1875, the day when the second mortgage to her intestate was recorded.

4. Hoagland comes next. His right dates from October 1, 1875, the day when his judgment was rendered in the district court.

5. Lenker comes next and last. Her right dates from November 11, 1875, the day when her judgment was filed in the office of the clerk of the district court.·

The judgment of the court below will be reversed, and ·cause remanded with the order that judgment be rendered in the case in accordance with this opinion.

All the Justices concurring.