D. W. NAILL *et al.* v. THE KANSAS FARMERS' FIRE
INSURANCE COMPANY.

1. MUTUAL FIRE INSURANCE—*Assessments — Separate Classes.* Chapter
111, Laws of 1875, (Comp. Laws of 1879, ch. 50a,) provides that the
business of each class of a mutual fire insurance company must be
conducted separately from the other, and that in no case shall an
assessment be made upon the premium notes of one class to pay the
losses or expenses of the other. The statute provides also "that
the goods, wares, etc., contained in buildings used for merchandise,
must be insured in the second, not the first, class." *Held,* That where
one insures with knowledge of the above requirements, and the pol-
icy shows upon its face that it was issued as "class No. 2," a general
judgment rendered on such a policy cannot be enforced against prop-
erty expressly devoted to the payment of losses on property of the
first class, but may, however, be enforced against any other property.

2. EXECUTION—*Injunction.* Where an execution against an insurance
company is directed to the sheriff of another county, who attempts
to levy on property which is exempt under chapter 111, Laws of 1875,
(Comp. Laws of 1879, ch. 50a,) the company, having its place of busi-
ness in the same county, may apply to the court of that county to
prevent the unlawful sale, and is not obliged to proceed in the court
from which the execution issued.

*Motion for Re-rehearing.*

THE material facts are stated in *Insurance Co. v. Amick,* 45
Kas. 74, 738, and in the opinion, *infra,* filed at the session of
the court in October, 1891.

*F. A. Waddle,* for the motion.
*Stambaugh, Hurd & Dewey,* contra.

*Per Curiam:* Mrs. Lydia A. Amick obtained a policy of in-
surance for $2,000 on the 7th day of November, 1883, of the
Kansas Farmers' Mutual Fire Insurance Company, which was
organized at Abilene, in this state, in 1882, under the provisions
of chapter 111, Laws of 1875. The policy was to be in force
from November 7, 1883, at noon, to the 7th of February, 1884.
The premium was $10, and was paid in cash. Of the insur-
ance, $1,300 was upon merchandise, consisting of dry goods,

notions, hats and caps, etc., in a one-story frame building on lots 33 and 35, in block 9, in Ottawa, in this state, and $700 on household furniture, family apparel, books, music, etc., in the same building. Under the provisions of chapter 111, two classes of policies were issued by the company, one denominated "class No. 1," and the other "class No. 2." The business of each class is required by the statute to be conducted separately and independently of the other, and the statute specifically provides that "in no case shall an assessment be made by the company or association upon the premium notes of one class to pay the losses or expenses of the other class." (Ch. 111, §1, subdiv. 2.) The policy accepted by Mrs. Amick had clearly and plainly written upon its face "Class No. 2." There was also indorsed upon the back of the policy the letters and figures "Class No. 2." All the persons who in 1883 accepted policies from the insurance company in class No. 2 knew, or ought to have known, if they acted prudently, that class No. 2 was not in a good financial condition. From the insurance report of the state for 1884, the true condition of class No. 2, for 1883, is shown, as follows:

### MEMBERS.

| | |
|---|---:|
| Number of members added during the year....................... | 261 |
| Number of members who have withdrawn, or whose policies have been canceled, during the year................................ | 29 |
| Number of members belonging to the company December 31, 1883, | 232 |

### RESOURCES.

| | | |
|---|---:|---:|
| Amount of premium or deposit notes in force December 31, 1883....................................... | $1,665 | 19 |
| Amount of all other resources, viz., premiums in course of collection............................................. | 823 | 49 |
| Total amount of resources........................... | $2,488 | 68 |

### EXPENDITURES.

| | | | | |
|---|---:|---:|---:|---:|
| Amount paid for losses occurring during the year.......... | | | $30 | 62 |
| Amount paid to agents .................................. | | | 505 | 65 |
| All other expenditures during the year, viz.: | | | | |
| Express................................... | $37 | 30 | | |
| Postage and telegraphing.................. | 19 | 04 | | |
| Books, blanks, and stationery ............. | 323 | 15 | | |
| Reinsurance.............................. | 184 | 00 | | |
| General agent's salary and expense ........ | 600 | 00 | | |
| Total........................................... | | | 1,163 | 49 |
| Total expenditures during the year................... | | | $1,699 | 76 |

So it appears from the records of the company and the official statement of the superintendent of insurance for the state, that in 1883 the total amount of resources for class No. 2 was $2,488.68, and that the expenditures for said class No. 2 for that year were $1,699.76. The persons having insurance in class No. 2, in 1883, had no other notes, funds or resources to look to for the collection of their claims than the $2,488.68, unless other notes were executed, or other funds collected, or some other thing done after that date. The condition of class No. 1, in 1883, was much better. The amount of premium notes in force in that class on December 31, 1883, was $65,-838.23. But, of course, the insurers in class No. 2, under the statute, had no right to expect that the $65,838.23 of premium notes given by insurers in class No. 1, and expressly devoted by the statute to pay the losses and expenses of class No. 1, could be assessed, used or levied upon to pay the risks in class No. 2. The statute prohibits this. On the 27th of December, 1883, a fire occurred, destroying a part of the property insured by Mrs. Amick. On the 23d of December, 1884, she brought her action upon the policy of insurance of the date of the 7th of November, 1883, and attached to her petition a copy of the policy, which showed upon its face that it was issued under the provisions of chapter 111, as "class No. 2." Subsequently, judgment was rendered in favor of Mrs. Amick and against the insurance company, and other proceedings were thereafter had, as stated in the opinions already filed. (37 Kas. 73; 45 id. 74, 738.)

In overruling the motion for a further hearing, it is only necessary to repeat some of the things already stated in the opinion of June 6, 1891. In the first place, Mrs. Amick accepted her policy of insurance with full knowledge of the provisions of chapter 111, Laws of 1875, and she cannot now be heard to say that she did not understand the terms of her policy, or the conditions under which it was issued. She had her property insured in the second, not the first, class. The statute expressly prescribes that "the goods, wares, etc., contained in buildings used for merchandise must be insured in

15 — 47 KAS.

the second, not the first, class." Mrs. Amick knew at the time of accepting her policy that the business of each class was conducted separately and independently of the other. She paid her money for her insurance, but she knew at the time of making the payment that the premium notes given by the company for insurance of the first class could not be assessed or used to pay the losses in the second class. All that we decided in the opinion handed down was, that —

"Under the provisions of chapter 111, Laws of 1875, (ch. 50a, Comp. Laws of 1879,) the business of each class of a mutual fire insurance company must be conducted separately and independently of the other, and in no case shall an assessment be made by the company or association upon the premium notes of one class to pay the losses or expenses of the other.

"A general judgment, rendered upon a policy of insurance on property of the second class only, issued on November 7, 1883, by a mutual fire insurance company, under the provisions of chapter 111, Laws of 1875, (ch. 50a, Comp. Laws of 1879,) cannot be collected from the property expressly devoted by the statute to the payment of losses by the company on property of the first class." (45 Kas. 738.)

We held then, as we hold now, that the general judgment may be and can be enforced against any and all of the property of the insurance company which is not expressly exempt by statute. We never held, and never intend to hold, that the execution could not be levied upon the general property of the insurance company subject to any execution. If the insurance company has money in its treasury, has office furniture, books, papers, real estate, or other property subject to execution, the general judgment may be enforced against it. The property that we said could not be levied upon to pay the judgment in this case was premium notes or other like funds, expressly devoted by the statute for the protection of the insurers in the first class. As the statute expressly forbids any assessment to be made upon the premium notes of one class to pay the losses of the other class, we held before, and now hold, that the premium notes of the first class are exempted by the statute from being used, levied upon or sold to pay the losses or expenses of the second class. If the insurance company

could not assess the premium notes of the first class to pay the losses or expenses of the second class, it could not use or sell said notes for such an unlawful purpose. In brief, it could not divert the premium notes of the first-class insurers, or the proceeds thereof, or any moneys in the treasury therefrom, for the losses or expenses of the second-class insurers. If it could not do so directly, on account of the prohibition of the statute, it could not evade the law by indirectly doing the same thing through a judgment against it upon a default, or by any insufficient answer, where the petition in the court shows the judgment was obtained upon a policy issued by the insurance company in the second class only. The courts are not eager to assist insurance companies in violating the provisions of the statute under which they are authorized to transact business. We never intimated, in the slightest manner, that the original judgment was to be modified, changed, or vacated, or that it could not be enforced against property subject to execution.

When the learned district judge of Franklin county, on the 13th day of August, 1888, appointed D. W. Naill as receiver in this case, he fully recognized the principle announced in the opinion of June 6, 1891, and reiterated here, that the premium notes of the first class could not be assessed or used to pay a loss in the second class. The order appointing the receiver recites, among other things, that "If said defendant has not sufficient cash to satisfy said judgment, with interest and costs, then it is ordered that said defendant deliver to said sheriff any notes, bonds, bills or assets (other than premium notes) sufficient to satisfy said judgment, interest, and costs," etc. We affirmed the appointment of the receiver, but extended the order of the district judge so as to protect, not only the premium notes, but any other like funds (if there be any such) of the insurers expressly devoted by the statute to pay the losses of the first class. If a general judgment is rendered against a debtor, his exempt property cannot be taken or sold upon an execution issued on such a judgment, whether he answered the original petition or not. (*Sproul v. National Bank*, 22 Kas. 336; *In re Jones*, 2 Dill. 343; *Reed v. Umbar-*

*ger*, 11 Kas. 206; *Robinson v. Wilson*, 15 id. 595; *Rasure v. Hart*, 18 id. 340.) If property is specifically appropriated by the statute for the use or payment of a certain class of claims or judgments only, it cannot be used against the objection of the debtor, for the payment of every judgment. Such property is exempt, excepting for the purposes expressly prescribed by the statute.

A homestead may be sold upon a judgment for the purchase-money thereof, or for the erection of improvements thereon, but a general judgment, obtained even upon default, cannot be enforced against a homestead if the debtor object. Certain personal property, owned by the head of the family, is exempt under the statute against a general judgment, but not against a judgment rendered for the wages of a clerk, mechanic, or servant. If a judgment is rendered in the district court of Franklin county, and executions thereon are issued from that court to the sheriff of Dickinson county, the sheriff of the last-mentioned county cannot lawfully levy and sell the exempt property of the debtor in Dickinson county, whether it be exempt under the statute of the state or under the federal statute as a homestead, or as money due or to become due to the debtor as a pensioner; and while a sheriff cannot, in any case, upon an execution in his hands, allow any new defense or modify any judgment, he cannot sell any property of the debtor which is exempt by the state or federal statutes. If the sheriff of Dickinson county, on an execution issued upon a valid judgment in Franklin county, attempts to sell property exempted to the debtor under the state or federal statutes, the debtor residing in Dickinson county may apply to the district court of his own county, where the property is situated, to prevent the unlawful sale. He is not compelled to commence such litigation in Franklin county, or in a court beyond the limits of his own county; therefore, while "a judgment is the final determination of the rights of the parties in an action," the judgment never can be, and never was intended to be, enforced against property of the debtor which the state or federal statute forbids being applied to the payment of the claim or

judgment. The legislature has the same power to exempt the property of a corporation from levy under a judgment that it has to exempt the personal or real property of an individual; and a judgment cannot be enforced in the one case against the exempted property any more than it can be enforced in the other case. Whether the provisions of chapter 111, Laws of 1875, are wise or not, we are not called upon to say. If the legislature has said that the premium notes of an insurance company given by persons belonging to the first class, and similar funds, shall not be used to pay the losses of the second class, the letter of the statute must control, and we cannot wipe out the exemption by judicial construction. If it be true, as asserted by counsel for Mrs. Amick, that the insurance company is not doing any business of the first class, or if it has any property—real, personal, or mixed—not expressly devoted by the statute to the payment of losses of the first class only, then, of course, the original judgment may be enforced against all such property. Of course, all property not exempt is subject to levy and sale. We repeat what we said upon the former rehearing:

"If any property, assets or funds belonging to the second class at the date of the policy issued to Lydia A. Amick, or at the date of the fire, or at any other time, have been improperly or wrongfully transferred by the officers of the insurance company from the second class to the first class, to evade the payment of any judgment, debt, or other claim, such transfer will not prevent the collection of the judgment from such property, assets, or funds. Again, if the officers of the insurance company have concealed or secreted any of the property, assets or funds of the second class in the business of the first class, such property will also be subject to the payment of this judgment. Further, if the officers of the insurance company have covered up, by reorganization or any other change, any of the property, assets or funds which belong, or ought to belong, to the second class, or which in any possible way can be used, under the provisions of the statute, to pay the losses of the second class, such property is also subject to the payment of the general judgment." (45 Kas. 741.)

In case No. 5491, we affirmed the appointment of the receiver, but directed that he should not take possession or con-

trol of the premium notes given by persons insured in the first class only, or any other notes or funds expressly devoted by the statute to the payment of the losses in the first class. It might be beneficial for the receiver to ascertain what has become of the premium notes of the second class in force on December 31, 1883. If, in January, 1884, the insurance company ceased to do second-class business, still the premium notes in force in that class on December 31, 1883, until legally exhausted, could be used to pay the loss of Mrs. Amick, and the company could not, to the prejudice of her rights, or in violation of the statute, return to other insurers, or give to any other company these notes, or the proceeds thereof, or in any way divert them or any part of them from the payment of the loss of Mrs. Amick. In case No. 7017, the injunction was continued, excepting it was ordered to have no application to property not exempt from levy and sale.

The motion for a further rehearing will be overruled.

HORTON, C. J., and JOHNSTON, J., concurring.

VALENTINE J.: This case has been in this court at different times from 1887 up to the present time: *Insurance Co. v. Amick*, 37 Kas. 73; same case, 14 Pac. Rep. 454; *Insurance Co. v. Amick*, 45 Kas. 74; same case, 25 Pac. Rep. 211; *Insurance Co. v. Amick*, and *Naill v. Insurance Co.*, 45 Kas. 738; same case, 26 Pac. Rep. 944. The last decision rendered by this court, on June 6, 1891, in the above case of Naill and Mrs. Amick against the Kansas Farmers' Fire Insurance Company, was against Mrs. Amick and in favor of the insurance company; and this was the first decision rendered by this court against Mrs. Amick, and she, with her co-defendant, Naill, now moves for a rehearing. In addition to the facts already stated in the former opinions delivered in the above cases by myself, I would state the following: The insurance policy was an ordinary full-paid policy, executed by the insurance company, as a company, to Mrs. Amick on November 7, 1883. It was an absolute contract of indemnity, whereby the company, in its entirety and as a single corporate entity, agreed

to pay for all loss or damage to the insured property occasioned by fire up to the amount of $2,000, within 60 days after notice and proof of loss; or to repair, rebuild or replace the property lost or damaged; and this agreement to pay or to repair, rebuild or replace was without any reference whatever to classes of business or members of the association or assessments. It was as absolute and unconditional a contract of indemnity as is ordinarily made by stock insurance companies. No premium note was given or executed by Mrs. Amick or by any one else in payment for the insurance, but the price of the insurance was wholly paid in cash; hence Mrs. Amick was not further liable to the insurance company, or to anyone else with reference to the insurance; or, in other words, she did not procure the insurance "upon the mutual plan" of premium notes, assessments, etc., but purchased the insurance absolutely from the insurance company, just as any person might purchase insurance from an ordinary stock insurance company not doing business "upon the mutual plan" at all. Sections 5 and 8 of chapter 111 of the Laws of 1875, which were then in force, read as follows:

"SEC. 5. The members of any company or association formed under this act shall be liable to such company, or to any other person, only to an additional amount equal to the principal and interest of the premium note given when effecting insurance."

"SEC. 8. All persons insuring upon the mutual plan, in any company organized in accordance with the provisions of this act, shall constitute its members and stockholders," etc.

There was nothing in the policy in the present case showing that Mrs. Amick became or was a member of the insurance company; and nothing anywhere else that would make her such unless the aforesaid statutes would; and nothing showing anything with reference to the class of business in which the policy was issued further than has already been stated in my former opinion, reported in 45 Kas. 742; 26 Pac. Rep. 946. But, with the opinion that I entertain, all this is immaterial, for the reason that the judgment rendered in the original case was a general judgment, authorizing a general execution

against all the property of the insurance company subject to execution; and such judgment has never been modified in any particular by any court or person having any authority to modify it. Judgments may be modified or vacated in the same court in which they were rendered, under § 568, *et seq.*, of the civil code; and they may also be modified or vacated by the supreme court under § 542, *et seq.*, of the civil code; and see also § 77 of the civil code. But the present judgment has never been vacated or modified in any manner recognized by any law; and really the only question now involved in the case is, whether a sheriff holding a general execution, issued in pursuance of a general judgment and following the judgment, may so modify the judgment or the execution that he may levy it *only* upon particular kinds of the property belonging to the judgment debtor subject to execution, and whether he is liable, in a different forum from the one from which the execution was issued, to be compelled to so modify the same if he should fail or refuse to do so. It is claimed that the execution should be levied upon only property belonging to the insurance company as property of its second-class business; but it is shown that the insurance company has no such property; that it had ceased to do a second-class business on January 25, 1884 — long before any execution in this case was issued, long before the judgment in this case was rendered, and long before the time when the action in which such judgment was rendered was commenced. Such action was commenced on December 23, 1884; the judgment was rendered on October 17, 1885; and the question is now, whether such judgment may be enforced or not by the levy of an execution upon the general property of the insurance company subject to execution. Since January 25, 1884, the company has been doing only a single class of business, or, perhaps, rather a single business without reference to classes; and why should a sheriff, holding a general execution against all its property subject to execution, issued a great many years after January 25, 1884, and issued upon a general judgment rendered against the company on October 17, 1885, know that

the execution should not have force or effect as a general execution, but only as a special execution against a particular class of property belonging to a particular class of business which the company had not for a great many years, nor for more than $1\frac{1}{2}$ years before the judgment was rendered, carried on? How could the sheriff know that the company had ever carried on such a business, and modify the terms of the execution accordingly? Why should a sheriff be compelled to modify the terms of an execution, and then attempt to enforce it against a class of business which had not been in existence since January, 1884, more than a year and a half before the judgment was rendered, and more than seven years ago? "A judgment is the final determination of the rights of the parties in an action," (Civil Code, § 395,) and it imports absolute verity.

"No principle of law is more firmly settled than that the judgment of a court of competent jurisdiction, so long as it stands in full force and unreversed, cannot be impeached in any collateral proceeding on account of mere errors or irregularities, not going to the jurisdiction." (1 Black, Judgm., § 261.)

"A final judgment cannot be collaterally impeached because the opinion of the court shows that a different judgment should have been entered." (1 Black, Judgm., § 262.)

"It is a general rule that a valid judgment for the plaintiff definitely and finally negatives every defense that might and should have been raised against the action; and this is true not only with respect to further or supplementary proceedings in the same cause, but for the purposes of every subsequent suit between the same parties, whether founded upon the same or a different cause of action. A party cannot relitigate matters which he might have interposed, but failed to do so, in a prior action between the same parties or their privies in reference to the same subject-matter. And if one of the parties failed to introduce matters for the consideration of the court, that he might have done, he will be presumed to have waived his right to do so. If a party fails to plead a fact he might have pleaded, or makes a mistake in the progress of an action, or fails to prove a fact he might have proved, the law can afford him no relief. When a party passes by his opportunity, the law will not aid him." (2 Black, Judgm., § 754.)

"No defense can be set up against a judgment which might with proper diligence have been interposed in the action in which the judgment was rendered." (*Snow v. Mitchell*, 37 Kas. 636.)

See, also, *Boyd v. Huffaker*, 40 Kas. 634, 636, and authorities there cited.

"A party may have a good defense to an action, but if he fail to make such defense when the case is called for trial, he will not be permitted to come in weeks afterward and say that the judgment was wrong and ought to be set aside, simply because he had a good defense." (*Iliff v. Arnott*, 31 Kas. 674.)

See, also, *Larimer v. Knoyle*, 43 id. 351.

Now may a party, a corporation, which supposes it has a particular kind of defense in an action brought against it, fail to interpose the defense until the final judgment has been rendered in the case, and then, after several years have elapsed, and when an execution has been issued to enforce the judgment, appear before the sheriff and interpose its defense before him, and ask him to grant the defense, and, if he refuses, then go into a forum other than the one which rendered the judgment and issued the execution, and procure an order in that forum compelling the sheriff to recognize and sustain such defense? The original judgment was rendered in the district court of Franklin county, and the executions were issued from that court to the sheriff of Dickinson county, and it was the sheriff and the district court of the last-mentioned county that were asked to modify the executions or prevent their enforcement. Now, suppose the sheriff, when he was asked to modify these executions, or not to enforce them, for the reason that they should be enforced only against property belonging to the second-class business, of which there was none at that time, had answered: "I have examined that matter, and find that at the time when the original judgment was rendered, and even prior to the time when the action in which it was rendered was commenced, and more than seven years ago and ever since, your insurance company has been doing only one kind of business, and the judgment was rendered accordingly, and against the company in its entirety, and against all its property subject to

execution:" then should the sheriff allow the company's defense and modify the judgment and the executions accordingly? One of the things which the insurance company wishes to protect in the present case is its guarantee fund of $50,000, which was created in the early part of the year 1885, and before the judgment was rendered. The last execution issued on this judgment, and the one now sought to be modified or annulled, was issued on May 29, 1889; and on June 6, 1889, the superintendent of insurance reported concerning the aforesaid guarantee fund, as follows:

"The fund of the Abilene company consists of the stock of the Bonebrake Hardware Company, and the Abilene Water and Electric Light Company." (Supt. Ins. Rep. 1889, pp. 11, 12.)

It is not probable that any person would ever desire to attempt to levy an execution upon such a fund; and he could not do so until after all other resources had been exhausted. (Laws of 1885, ch. 130, § 2.) As to how actions may be brought and judgments rendered against mutual insurance companies doing business even upon the assessment plan, see 16 American and English Encyclopædia of Law, 88–90, and 2 May, Ins. (3d ed.), §§ 563a and 564. In the first authority cited, it is stated, among other things, as follows:

"When the insurance company refuses to make an assessment, it violates its contract, and becomes liable to the beneficiary for damages caused by such violation. Such damages, like all damages for breaches of contract, can be recovered by an action at law. The recovery should be for the maximum amount insured, unless the defendant shows, by pleadings and proof, that such sum should be reduced."

See also 2 May on Insurance, *supra*, to the same effect. It is further claimed by counsel for Mrs. Amick, that the insurance company has not only not done business in classes since January 25, 1884, but that the business which it has done it has done as one single business, including all kinds of fire insurance business; that since that time it has insured all kinds of insurable property. Under the statutes as they now exist, the insurance company would certainly have a right to do so.

(Gen. Stat. of 1889, ¶ 3418.) Therefore, in all probability, the insurance company has at the present time no property that belongs to any particular class of business, but simply has property, office furniture, and the like, belonging to itself as an entirety; and may not such property be levied upon, under a general execution against the company, issued upon a general judgment against the company? Or must Mrs. Amick and the sheriff still hunt for property belonging to the company's second-class business, which was extinguished more than seven years ago, and for property which no longer has any existence?