BENJAMIN HAFER, *et al.*, v. VIRGINIA HAFER, *et al.*

1. HOMESTEAD, *When Not Subject to Partition.*  Where a man dies, leaving a widow and minor children, his homestead is not subject to partition so long as his widow remains unmarried and occupies it as her residence, until all such children arrive at the age of majority, even though all the children may move away from said homestead.

2. ANTE-NUPTIAL CONTRACT, *Enforced to What Extent.*  Where an ante-nuptial contract is just and reasonable in its provisions, and was fairly made by parties competent to contract, it should be upheld

and enforced as to all the property of the parties contracting, including the homestead, when the same becomes subject to partition.

## *Error from Jackson District Court.*

THIS is the second hearing of this case in this court. (*Hafer v. Hafer*, 33 Kas. 449.) This action is for the partition of the homestead of the late Godfrey Hafer, who died intestate, on the 24th day of June, 1882, and left surviving him Virginia Hafer, his widow, and seven children. There was an ante-nuptial agreement between Godfrey Hafer and Virginia Bowser, now Virginia Hafer, made on the day of their marriage. That agreement is set forth in full in 33 Kas. 450, *et seq.*

The court decided that such ante-nuptial contract was fair and reasonable, and that its provisions should be upheld and enforced, so far as all property of Godfrey Hafer was concerned, excepting only the homestead occupied at the time of the first trial of this case in the Jackson district court, by Virginia Hafer and some of the minor children of Godfrey Hafer by a former marriage. After this case was remanded, it was tried by the court at the June Term, 1885, without a jury, and it made nineteen findings of fact. The court found that Godfrey Hafer and Virginia Bowser were legally married to each other after they had made the ante-nuptial agreement heretofore alluded to, and lived together as husband and wife until his death; that he died intestate, leaving seven children by a former wife, but no living issue by the said Virginia Hafer. The sixth finding of fact is as follows:

"The said southeast quarter of section twenty-three, in township seven, of range fifteen, Jackson county, Kansas, except the three acres sold therefrom, had for many years before said marriage of Godfrey and Virginia Hafer been the homestead of said Godfrey, and after said marriage remained and at the time of his death was the homestead of himself and family."

The tenth finding is as follows:

"Said Virginia Hafer continues to occupy said tract of land

in the sixth finding mentioned, as her place of residence and homestead."

The court further found that all of the children have left such homestead, and are all of full age, except Emma B. Hafer, now Emma B. Brennerman, who is seventeen years of age.

The court found, as conclusions of law, that the homestead provisions of the constitution cannot be superseded by an ante-nuptial agreement; that the tract of land mentioned in the sixth conclusion of fact is subject to partition, one-half in value, including the mansion house, to Virginia Hafer, and the other half in seven equal parts to the other heirs of Godfrey Hafer, and their grantees respectively; that the ante-nuptial agreement does not in any manner affect the rights of any of the parties herein to the homestead mentioned in the sixth finding of fact.

In accordance with the findings, the court rendered judgment that the ante-nuptial agreement was and is in all respects a valid and subsisting agreement, but also adjudged that defendant, *Virginia Hafer*, was the owner of one-half of the homestead described in the sixth finding of fact. There is no complaint of the division of the other property of decedent. Defendants made a motion for a new trial; motion overruled, and case brought here for review.

*Hayden & Hayden*, for plaintiffs in error.

*Broderick & Rafter*, for defendant in error Virginia Hafer; *Lowell & Walker*, for defendant in error James Hafer.

Opinion by HOLT, C.: We do not believe that the property occupied as a homestead by Godfrey Hafer in his lifetime, and now occupied by his widow, Virginia Hafer, was, at the time of the trial of this case, subject to partition. The court found that Virginia Hafer was occupying the same tract as her place of residence and homestead, and that Emma B. Hafer, now Emma B. Brennerman, was seventeen years of age. The statute provides:

"If the intestate left a widow and children, and the widow

again marry, or when all of said children arrive at the age of majority, said homestead shall be divided, one-half in value to the widow and the other one-half to the children." (Comp. Laws of 1879, ch. 33, § 5.)

The children left by Godfrey Hafer were not all of age. The widow, Virginia Hafer, continued to occupy as her home the homestead of the deceased, and until the widow married again, or the children all arrived at the age of majority, such homestead could be claimed by the widow as her homestead. (*Vandiver v. Vandiver*, 20 Kas. 501.) The court therefore erred in finding that the tract above mentioned and described was subject to partition.

1. Homestead, when not subject to partition.

This case was tried in June, 1885, and by this time Emma B. Brennerman must have arrived at the age of majority. We feel called upon to decide the question whether the division of the homestead by the court would have been proper if it could have been legally divided at that time. The only question to be decided is, whether the ante-nuptial contract entered into between Godfrey Hafer and Virginia Bowser is to be upheld and enforced with reference to the homestead occupied by the parties during their married life, or should it be divided under chapter 33, Comp. Laws of 1879? The court held, when this case was here before, that the ante-nuptial contract was valid, and provided a rule for settling the property rights of an intestate different from that laid down in the statute of descents and distributions, so far as all property was concerned, excepting only the homestead; and in reference to that it simply decided that such homestead could be occupied by the widow and minor children, independent of the said contract, until it was susceptible of partition. Now that the homestead may be divided, it is asked that the rule that applies to the distribution of the other property of an intestate shall not be applied to it. The constitution provides that a homestead occupied as a residence by the owner shall not be alienated without the joint consent of the husband and wife, when such a relation exists. The statute (ch. 33, Comp. Laws of 1879) further provides that the homestead shall

be exempt from distribution under any of the laws of the state, and from the payment of any of the debts of the intestate, but shall be the absolute property of the said widow and children. Both of these provisions are for the protection of the homestead, to preserve a home for the family against the claims of creditors. When, however, the widow marries again, or all of the children arrive at the age of majority, or the homestead is abandoned, it is then no longer a question of securing the homestead for the family against outside creditors, but is simply a matter of dividing it among those who have alike shared in the protection afforded them by the beneficent provision of the law exempting their home from forced sale. Then it may be divided exactly the same, so far as the widow and children of the deceased are concerned, as any other property that the intestate may have died seized of.

We are not able to perceive any valid reason for a different rule for dividing a homestead under an ante-nuptial contract, from that applied to other property. To be sure, there is a limitation of time when the homestead shall not be divided, but when such limitation expires and it is to be divided by law, there is no difference in the proportions given to the widow and the children, and that of any other property. We do not believe the claim of the widow to the homestead is sacred and inviolate as against the legal claims of the children, after it can be divided. In a contract fairly made, and for a valuable consideration, Virginia disclaimed any share she might possibly have in the future in the homestead, and agreed to take in lieu thereof the property stipulated for in the contract. This contract was made in prospect of marriage, and as a condition of the same. The interests and rights she now claims arose wholly because of the marriage so contracted under those conditions, and she obtained them subject to the express contract she had voluntarily entered into. If Godfrey Hafer had contracted with another party, before his marriage with Virginia, and which contract would have been a lien upon the homestead, and of which she had been cognizant, she could not

2. Homestead, when subject to partition.

now successfully assert her homestead rights against such party.

We think there are equally good reasons, in fairness and equity at least, for holding that she cannot now claim, in the face of and in opposition to her contract, what might otherwise have been her rights.

The defendants in error cite, among other authorities, *McGee v. McGee*, 91 Ill. 553; *Phelps v. Phelps*, 72 id. 546; *McMahill v. McMahill*, 105 id. 596; *Abbott v. Cromartie*, 72 N. C. 292; *Garlock v. Baker*, 46 Iowa, 334. (See also *Mahaffy v. Mahaffy*, 63 Iowa, 55.) The only case we care to notice is *McMahill v. McMahill*, upon which the defendants evidently rely, in which it is enunciated that a widow's homestead right cannot be barred by an ante-nuptial contract to that effect. The court, however, founded its opinion upon the statutes of that state. Chief Justice Scott, speaking for the court, says:

"Section 1 of the homestead act, in force July 1, 1873, secures to every householder having a family an estate of homestead in the farm or lot occupied by him or her, which can only be extinguished in the mode provided in a subsequent section of the act; and section 2 of the same act provides such exemption shall continue after the death of such householder, for the benefit of the husband or wife surviving, so long as he or she shall continue to occupy such homestead. Only two modes are provided by which the homestead right or estate may be extinguished: first, by a release, waiver, or conveyance, in writing, subscribed by such householder and his wife, or her husband, if he or she has one, and acknowledged in the same manner as conveyances of real estate are required to be acknowledged; or, second, by conveyance of the premises, with abandonment or giving up of possession. The principle is, the statute secures the homestead to the husband or wife surviving, and such right can only be extinguished in the mode provided by the statute. It cannot be done by an ante-nuptial agreement, for the simple reason that is not one of the modes provided by statute by which such right may be extinguished."

Such a decision was reached only by a divided court, three of the seven justices dissenting.

34 — 36 KAS.

Section 5, chapter 33, Compiled Laws of 1879, prescribes an entirely different rule from § 2, chapter 52, Statutes of Ill., where, relating to homesteads, it is said:

"Such exemption shall continue after the death of such householder, for the benefit of the husband or wife surviving, so long as he or she continues to occupy such homestead."

The very reason given in that case to sustain the rule therein laid down, is wanting in this state.

When all the children arrive at the age of majority, a homestead in Kansas may be divided. In Illinois, a homestead shall continue for the benefit of the wife surviving, so long as she occupies the same. We see nothing in *McMahill v. McMahill* that conflicts with the conclusion we have arrived at, when the statutory provisions of each state are compared and considered.

We believe the rule laid down for the division of other property should be applied to a homestead also, when it is to be divided.

It is recommended that the judgment of the court below be reversed.

By the Court: It is so ordered.

All the Justices concurring.