Towle v. Towle.

HOWARD H. TOWLE, *a Minor, etc., et al., Appellees,* v. HARRIET H. TOWLE, *Appellant,* and GEORGE A. TOWLE *et al., Appellees.*

No. 16,289.

SYLLABUS BY THE COURT.

1. HOMESTEADS—*Statute of Descents and Distributions Not in Conflict with Constitutional Provision.* Sections 5 and 6 of the statute of descents and distributions (Gen. Stat. 1901, §§ 2507, 2508), providing for the distribution of the homestead of an intestate, are not in conflict with the provision of section 9 of article 15 of the constitution exempting the homestead from forced sale under any process of law.

2. ———— *Construction of Homestead Laws.* The homestead laws embrace not only the constitutional provision (art. 15, § 9) but also the provisions with reference to the homestead in the statute of descents and distributions (Gen. Stat. 1901, ch. 33) and the statute of exemptions (Gen. Stat. 1901, ch. 38).

3. ———— *Partition—"Forced Sale."* The sale of a homestead in partition under the provisions of section 6 of the statute of descents and distributions (Gen. Stat. 1901, § 2508) is not a "forced sale" within the meaning of that term as used in section 9 of article 15 of the constitution.

4. ———— *Legislative Powers Respecting Homestead Right.* While the legislature is without power to enact a law limiting or restricting the homestead right guaranteed by section 9 of article 15 of the constitution, it has the power to enact laws which in effect add to or increase the exemptions provided by the constitution.

Appeal from Clay district court; SAM KIMBLE, judge. Opinion filed February 12, 1910.   Affirmed.

*F. B. Dawes,* and *R. C. Miller,* for the appellant.

*C. C. Coleman,* and *F. L. Williams,* for the appellees.

The opinion of the court was delivered by

PORTER, J.:  This was a suit for partition of a farm consisting of 160 acres in Clay county.   The land belonged in his lifetime to Jeremiah H. Towle, who died in January, 1907, intestate, leaving surviving him his widow, Harriet H. Towle, two sons, George A. Towle and Fred E. Towle, and a number of grandchildren, who are the children of a deceased son and daughter. The suit was brought by three of the grandchildren. The petition alleged that all of the children of Jeremiah H. Towle and Harriet H. Towle have arrived at the age of majority; that Harriet H. Towle is the owner of an undivided one-half interest in the land; set out the respective interests of each of the children and grandchildren, and asked for partition.

In her answer Harriet H. Towle alleged that the land in question was occupied by Jeremiah H. Towle and herself as husband and wife as their homestead at the time of his death, and that after his death she continued to occupy it as her homestead; that she has no other residence or homestead of any kind, and that it is her intention to occupy the same as her homestead so long as she lives.   She therefore prayed that there be no partition of the premises.

The court sustained a demurrer to this defense and the cause proceeded to trial, resulting in a judgment finding that there was no homestead right in the premises which prevented the same from being partitioned. The decree provided for the partition of the land in severalty, and appointed three commissioners to make partition, with directions to appraise the value of the land and the separate interests therein if the commissioners

should be of the opinion that the land could not be divided without manifest injury to the interests of the owners. From the judgment and rulings of the court Harriet H. Towle appeals.

Her contention is that the land is not susceptible of partition so long as she continues to occupy it as a homestead, notwithstanding the children have all arrived at the age of majority. The court sustained the demurrer on the ground that partition is authorized by sections 5 and 6 of the statute of descents and distributions (Gen. Stat. 1901, §§ 2507, 2508). These sections read as follow:

"If the intestate left a widow and children, and the widow again marry, or when all of said children arrive at the age of majority, said homestead shall be divided, one-half in value to the widow and the other one-half to the children.

"Such division may be made by the mutual consent of all the parties interested, as hereinafter provided for the allotment of other real estate; or, if the said homestead is not susceptible of division, without manifest injury to the premises, or to the rights of the parties interested, the same may be sold as provided in the code of civil procedure for the sale of real estate not susceptible of partition."

The appellant contends that these sections of the statute are in direct conflict with the homestead provision of the constitution, and therefore void. The theory of counsel for the appellant is stated in the following extract from the brief:

"Under the provision of the last section of the statute quoted above, without taking into consideration the provisions of the constitution, this court has several times decided that when the deceased left a widow and children the homestead could be divided when the youngest child arrived at the age of twenty-one years. We think all of these decisions were erroneous. This court prior to a few years ago universally held that after the youngest child arrived at the age of twenty-one years the homestead interests of the family ceased and the property could be sold on execution for the debts of the deceased owner, and that the interests of the widow

could then be sold for her own debts. All of this on the theory that when the youngest child arrived at the age of twenty-one years the homestead interests ceased.

"Now we believe that all of these decisions were erroneous, that the court arrived at its conclusions by a construction of the statutes alone, without any consideration of the constitutional provision relating to homesteads, and we think that this court has so held in at least two important cases.

"If the constitution absolutely gives a homestead interest to the family of the deceased owner so long as such family resides upon the land, and the wife living upon the homestead alone or with children over twenty-one years of age will, under the law, be deemed the family of the owner, then it follows that paragraphs 2507 and 2508 of the General Statutes of 1901 are squarely in conflict with the constitution of the state, and void."

For more than forty years the statute in question has been assumed by the courts and the profession, as well as by the legislature, to be in perfect harmony with the homestead provision of the constitution. In none of the decided cases where the statute has been construed has it ever been suggested that any conflict exists between the statute and the constitution. The case therefore presents a phase of the homestead law which must be regarded as novel in the extreme.

In *Vandiver v. Vandiver*, 20 Kan. 501, the syllabus reads:

"Where a husband and wife occupied certain real estate as a homestead at the time of the husband's death, and their children were all of age, and none of them occupied the residence of the intestate at his death, nor thereafter, but the widow continued to occupy it as her home after the decease of her husband, the premises are the absolute property of the widow and her children; and the children, being all of age, are entitled to have the premises partitioned, one-half in value to go to the widow, and the other one-half in value to go to the children. If the homestead is not susceptible of division, the same may be sold, and the proceeds divided."

In· the syllabus in *Dayton v. Donart,* 22 Kan. 256, it was said:

"So long as said widow and children continue to occupy the homestead, and the widow does not marry again, and one or more of the children remain minors, they may hold the property as their homestead."

The case of *Brady v. Banta,* 46 Kan. 131, was one where the widow and children of the owner continued after his death to occupy the premises as a homestead. The widow remarried, but continued with her children to occupy the property as a homestead. It was held that by reason of the continued occupation of the land by the children its homestead character was· not destroyed by the marriage of the widow, but that her marriage made the property subject to partition between her and the children.

Other cases recognizing the validity of the statute are: *Hafer v. Hafer,* 33 Kan. 449, and 36 Kan. 524; *Barbe v. Hyatt,* 50 Kan. 86; *Trumbly v. Martell,* 61 Kan. 703; *Mitchell v. Mitchell,* 69 Kan. 441.

In *Trumbly v. Martell,* supra, referring to the time when partition can be had, it was said in the opinion·:

"This can be done only when the widow marries or when all of the children arrive at the age of majority. If the mother remain a widow, there can be no partition until all of the children arrive at majority. She may then be allowed one-half in value of the property, the other half going to the children. In case the widow marry and a division of the homestead is had, the half set off to the children would still be their homestead." (Page 705.)

The foregoing are a few of the many cases which might be cited involving the construction of these provisions of the statute authorizing the partition and division of lands occupied as a homestead by the widow and children of an intestate when the youngest child arrives at majority or in case the widow marries. In none of them was it even suggested that the provision authorizing the partition and distribution of the home-

stead under such circumstances is contrary to the constitutional guaranty of the homestead right.  And, in fact, there is no such conflict between the statute and the constitution.

Our homestead laws, although founded upon section 9 of article 15 of the constitution, embrace not only that provision of the constitution but the statutes enacted by the legislature for the purpose of carrying the constitution into effect.  If the constitution were silent on the subject, the legislature would have the power to enact a homestead law.  It may enact legislation extending the homestead right beyond that guaranteed by the constitution, "so long as the extent of the homestead shall be in accordance with sound policy and humanity, and no greater than shall be reasonably necessary to protect the citizens in their pursuits necessary to their existence and well-being."  (*Cusic v. Douglas and others*, 3 Kan. 123, 133.)  In other words, the power of the legislature over the homestead right is limited only by the federal and state constitutions. The legislature, without the slightest interference with the constitution of the state, might enact a law declaring that a homestead to the extent of 320 acres of farming land or of two acres of land within the limits of an incorporated town or city shall be exempt from forced sale, because all the legislative power the people possess is vested in the legislature, and there is nothing in the constitution prohibiting it from extending the homestead right.  The only limitation it places upon the legislature is that the legislature shall enact no law restricting the homestead right guaranteed by the constitution.  (*Chambers v. Cox*, 23 Kan. 393; *Cross v. Benson*, 68 Kan. 495.)  As was said in the opinion in *Sumner County v. Wellington*, 66 Kan. 590, 593: "Our constitution limits, rather than confers, power, and hence we look to it to see what it prohibits, instead of what it authorizes."  (See, also, *Francis, Treas., v. A. T. & S. F. Rld. Co.*, 19 Kan. 303, and *Comm'rs of Ottawa Co. v. Nelson*, 19 Kan. 234, 237.)

Keeping these principles in mind, and comparing the terms of the constitutional guaranty with the provisions enacted by the legislature for the protection of the homestead, it will be found that there is no actual conflict between them; but, on the contrary, perfect harmony so far as they travel together. The comparison may best be made by bringing the provisions of both into juxtaposition. The constitutional provision, so far as it concerns this inquiry, reads:

"A homestead to the extent of one hundred and sixty acres of farming land, or of one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists." (Art. 15, § 9.)

The foregoing is also the exact language of section 1 of the statute on "Exemption." (Gen. Stat. 1901, § 3016.)

The statute of descents and distributions begins with a recognition of the homestead right by providing for the distribution of an intestate's property, "after allowing to the widow and children of any deceased intestate of this state the homestead provided in the next section of this act," etc. (§1; Gen. Stat. 1901, § 2503.) Section 2, so far as it is applicable here, reads:

"A homestead to the extent of one hundred and sixty acres of farming land, or of one acre within the limits of an incorporated town or city, *occupied by the intestate and his family, at the time of his death, as a residence, and continued to be so occupied by his widow and children, after his death,* together with all the improvements on the same, *shall be wholly exempt from distribution under any of the laws of this state, and from the payment of the debts of the intestate, but shall be the absolute property of the said widow and children.*" (Gen. Stat. 1901, § 2504.)

We have italicized that portion of the statute which differs from the words of the constitution.

The statute of descents and distributions is primarily concerned with the devolution of the title and the distribution of an intestate's property, real and personal. (*Cross v. Benson,* 68 Kan. 495.) The statute as it now reads became the law in 1868, only seven years after the convention met; it was enacted by a legislature composed of men who, it may be assumed, were imbued with the spirit which pervaded the convention and which led to the adoption of the homestead provision, after it had been separately submitted and voted upon by the people.

The legislature, therefore, while making provision as to how the title of an intestate's property shall vest and be distributed, was mindful of the constitutional guaranty of the homestead right, and avoided any conflict therewith by employing in section 2 the language of the constitution; and then added provisions broader and wider than those expressly mentioned in the constitution. The subject was germane to that upon which the legislature was acting, and it was, moreover, of the utmost importance that a statute providing for the distribution of the intestate's property should protect the family in their homestead right, unless it was the intention of the legislature that the lands comprising the homestead be divided and distributed in the same manner as other property. A comparison of the constitutional provision with those of the statute makes it apparent that the constitution is narrower than the statute. In some respects they are alike; thus, section 2 of the statute exempts the homestead from payment of the debts of the intestate; but, without any statute, the homestead would be exempt from the payment of the debts of the intestate, because such is manifestly the intent of the constitutional provision which declares that it shall be exempt from forced sale. In this respect the statute and the

constitution are in accord. But the constitution is silent as to whether the homestead shall be distributed; it merely exempts the homestead from forced sale under any process of law and from alienation without the joint consent of husband and wife while that relation exists. The statute goes further and declares that the homestead shall be wholly exempt from distribution under any of the laws of this state. Were it not for this provision of the statute there would be nothing to prevent the homestead from being distributed the same as other property of an intestate. It will also be observed that the statute goes further than the constitutional provision in another respect. The constitution exempts the homestead "occupied as a residence by the family of the owner" (art. 15, § 9), while the language of the statute is that the homestead right extends to the lands "occupied by the intestate and his family, at the time of his death, as a residence, and continued to be so occupied by his widow and children, after his death." (Gen. Stat. 1901, § 2504.) Were it not for this last statutory provision it would have at least required judicial interpretation to extend the homestead right to the family after the death of the owner. (See *Cross v. Benson,* 68 Kan. 495.)

However, it is not contended that any necessary conflict exists between section 2 of the statute and the constitution; the conflict which the appellant relies upon is said to be in the provisions of sections 5 and 6 (Gen. Stat. 1901, §§ 2507, 2508), which are quoted supra. Section 5 provides in a case like the present that if the widow again marry, or when all the children arrive at the age of majority, the homestead shall be divided; and section 6 provides that in such cases, if division can not be made by mutual consent, or if the homestead is not susceptible of division, it may be sold as in the ordinary partition suit.

We have attempted to show that there is nothing in the constitutional provision which exempts lands occu-

pied by the family of an intestate as a homestead from being distributed in the same manner as other property, and that if it were not for the exemption found in section 2 of the statute the lands embraced in the homestead would be so distributed. Since, therefore, it requires the statute to prevent the homestead from being distributed in the ordinary course as other property, and since the legislature possessed the power to make the exemption, it necessarily follows that the legislature possessed the power to say how long the exemption from distribution shall continue; and the legislature has done this in the same statute and has declared that the premises occupied as a homestead shall be subject to partition and distribution if the widow again marry or when all the children have arrived at the age of majority. All the provisions of this statute, so far as they relate to the homestead, must be construed together and in connection with the constitutional provisions and the statute of exemptions; and it is clear that if section 2 of the statute is not in conflict with the constitution, sections 5 and 6 are not.

No decisions from other courts are cited in support of the appellant's novel claim, and our attention has not been called to any cases from other states where this question has been raised. In *Eubank & Co. v. Landram*, 59 Tex. 247, it was held that the homestead is not subject to partition among the heirs so long as the surviving spouse continues to occupy the homestead as such. The decision, however, rests wholly upon an express constitutional provision that the homestead "shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead." (Page 248.) In the opinion it was said:

"In other words, the constitution protects the surviving husband or wife in their right to the homestead, whether as against the heirs of the deceased or

the creditors of the survivor, so long as such survivor occupies the homestead as such." (Page 248.)

In so far as the case has any application to the matter under consideration, it makes for the construction we have placed upon our constitutional provision. The general provisions of the Texas constitution, while stated more in detail than ours, merely exempt the homestead from forced sale or alienation.

The theory of the appellant's case, as appears by the excerpt from the brief, finds its only support in what is obviously an unwarranted extension of the principle upon which *Cross v. Benson,* 68 Kan. 495, was decided, in 1904, and the doctrine announced in the recent case of *Weaver v. Bank,* 76 Kan. 540. In *Cross v. Benson* the land belonged to the husband and was occupied as a homestead by himself and wife until his death. She continued to occupy it as her homestead after his death. Creditors attempted to seize it and deprive her of her homestead on the theory that, there being no minor children, the homestead right ceased upon the husband's death. It was held, on the contrary, that as the wife was "the family of the owner" at his death, she continued to be "the family of the owner" so long as she occupied the premises as her homestead, and that during such occupancy the premises were exempt from forced sale for the payment of the debts of the husband. The case of *Weaver v. Bank* was one where the widow continued to occupy the homestead as such after all the children had become of age and had moved away, leaving her in its sole occupancy. Afterward judgment was obtained against her on her own debt and an execution was levied upon the premises. It was held, overruling *Ellinger v. Thomas,* 64 Kan. 180, that "when the homestead character has once attached, it may persist for the benefit of a single individual (either the husband or the wife) who is the sole surviving member of the family." (Syllabus.) It was further held that, although the homestead was

occupied by the wife as its sole occupant, it was exempt as against her own creditors as well as those of her husband's estate, extending the doctrine of *Cross v. Benson.*

The cases may be said to serve as forcible illustrations of the liberality with which this court has always construed the homestead and exemption laws in order that the wise and beneficent purpose of their enactment shall not be defeated. The decisions go quite as far toward extending the scope and purpose of the constitutional provision as any to which our attention has been directed. We are satisfied that the doctrine they announced is sound; but it furnishes no substantial support for the contention which the appellant makes. Both cases were contests between the family and creditors, and a liberal construction was given to the constitutional exemption in order to protect the homestead of the family from the grasping creditor. The appellant now insists that the doctrine should be extended for the purpose of protecting the surviving wife or husband against the heirs of the owner, who are members of the same family and equally entitled to the protection afforded by the constitution.

In *Weaver v. Bank* the statute of descents and distributions was not involved nor in any way considered. In a sense the statute was involved in *Cross v. Benson.* It was brought into the case in this way: The creditors contended that the constitutional exemption does not survive the death of the owner, and that any extension of the homestead right beyond his death must be found, if at all, in the statute of descents and distributions; and then proceeded to argue that under the statute the homestead right does not survive for the benefit of a widow and child or children who have reached the age of majority, there being no minor heirs. With respect to this contention it was said in the opinion:

"The constitution creates the homestead. This court is the final interpreter of that instrument, and no legislative misconception of its scope, if any such should be-

come manifest, can be permitted to diminish the field of its operation. . . . Property descending to heirs must be distributed, properly to be enjoyed. With this distribution the constitution has nothing to do. These are matters left by the constitution to the legislature. But homestead interests are disturbed by them no more than the division of the title and the division of the land necessarily require, and the rights of creditors are enlarged no further than these circumstances necessarily compel. Neither descent nor distribution can make subject to execution for payment of debts any portion of the homestead inherited and occupied by a person who is not by death, or by subsequent circumstances, taken from the category of the family of the owner." (Pages 504, 505.)

There is no recognition here of any conflict between the statute and the constitution, but merely a suggestion as to what the result would be "if any such should become manifest." (Page 504.) Nor does it follow, because the statute of descents and distributions is powerless to make the homestead subject to forced sale for the payment of debts, that it is likewise powerless to compel a division of the land comprising the homestead for the benefit of the members of the family when the widow remarries or all the children attain their majority. In former decisions this court has recognized the doctrine that the homestead character of land is not necessarily destroyed by partition of the same. (*Brady v. Banta,* 46 Kan. 131; *Trumbly v. Martell,* 61 Kan. 703.)

Had the question presented here been raised in *Cross v. Benson* we have no doubt the court would have declared that the effect of the statute is to broaden and extend the homestead right guaranteed by the constitution; and the decision would have been rested as much upon the terms of the statute as upon a liberal construction of the constitutional provision. But no such question was presented or considered, because no one claimed in that case that the statute conflicts with the constitution.

A further contention upon which the appellant relies

is that partition of the homestead requires a sale of the premises by order of the court in case the land be found not susceptible of division, and that this is a "forced sale," in direct violation of the constitutional provision, and for this reason the statute is unconstitutional and void. The decisions of other courts are not entirely harmonious in construing the term "forced sale," owing largely to the difference in the context with which it is used in various statutes and constitutional enactments. In *Peterson v. Hornblower*, 33 Cal. 266, construing the term as used in the constitution, it was held not to be synonymous with a "sale on execution," because the latter may be and often is voluntary in every respect. It was said in the opinion: "Its quality, as being voluntary or forced, depends not upon the mode of its execution, but upon the presence or absence of the consent of the owner." (Page 276.) Other cases hold the words "forced sale" to mean any sale made under the direction or order of a court against the will of the owner, or where he has not done some act which amounts to giving his voluntary consent thereto, such as the execution of a mortgage. (See 3 Words & Ph. Jud. Def. p. 2871, and cases cited.) This is the first time the question has been raised in this court. In former decisions the term "forced sale," as used in section 9 of article 15 of the constitution, has been assumed to have reference solely to a sale of the homestead for the payment of debts, in which the proceeds of the sale would go to a creditor and the family would be deprived of their homestead. In *Hannon v. Sommer*, 10 Fed. 601, while the precise question was not involved, as the sale was under a mortgage foreclosure, the court used this language:

"The words 'forced sale,' employed in the above provision of the constitution, should, we think, be held to mean sales upon execution or other process for the collection of the ordinary debts of the owner." (Page 603.)

A sale in partition is not a "forced sale" within the

terms of the homestead laws, since it is no more than a process for the purpose of dividing and distributing among the owners real estate where it is found impossible to have a division in kind. The proceeds of the sale take the place of the real estate and are divided between the owners, each receiving his share in lieu of his respective portion of the real estate. It is solely for the benefit of the owners that the sale is made, because there is no other way in which to give to each his interest. In *Hafer v. Hafer,* 33 Kan. 449, 36 Kan. 524, it was held that the trial court erred in decreeing that lands comprising a homestead were subject to partition, because Emma B. Hafer, a daughter, who had not arrived at full age, still continued to occupy the homestead as such. All the other children had attained majority and had left the homestead. It was held that until the youngest child was of full age the premises were not subject to partition. If the appellant's contention here is sound the daughter in that case, after she became of age, could have prevented partition of the premises and thus have defeated the rights of her brothers and sisters to a division and distribution of the land during her natural life, if she continued that long to occupy the premises as her homestead.

It would not be difficult to suppose other instances where such a rule would work great hardship to needy and deserving children by depriving them of their inheritance. The constitution puts the home beyond the reach of creditors. As Mr. Chief Justice Hemphill said in *Sampson & Keene v. Williamson,* 6 Tex. 102, it creates of the home a "sanctuary from every species of intrusion, which, under color of law, would subject the property, by any disposition whatever, to the payment of debts." (Page 117.) The construction which the appellant contends for would place it beyond the reach of those to whom it belongs, unless they are so situated that they can occupy it as a home; and would place it in the power of a single member of the family to deprive

44—81 KAN.

the others, however needy or worthy, of their inheritance. This would be a manifest perversion of the purpose and intent of the constitutional provision.

The judgment is affirmed.

JOHNSTON, C. J. (dissenting): The constitution gives the homestead exemption, prescribes the conditions upon which it may be enjoyed, including its extent and duration, and the right thus given may be increased but can not be diminished by any statute. Under the constitution it is occupancy as a residence by the family of the owner that impresses the premises with the homestead character. The property in question was occupied as a homestead when Jeremiah H. Towle died, and it has been occupied by his widow ever since that time. It is conceded that it was exempt to her for some time after his death. When did it lose its homestead character? That must be ascertained from the constitutional provision, and the only limitation found in it which operates to terminate the homestead right is the implied one of nonoccupancy. The home is exempt so long as it is occupied by the family of the owner. It is not only exempt from forced sale for debt, but it is also exempt under any process of law on every account, except for taxes, for purchase money and for cost of improvements. The exceptions to the exemption are particularly stated, and none is found there providing that the homestead may be sold in order to give children the shares which they may have inherited, nor is there anything in the provision indicating that the homestead right terminates when the children reach majority. Besides, the necessity for the protection which the homestead was designed to give ordinarily increases as the widow grows older. Several of the earlier cases are cited to show that distribution may be made after the widow marries or the children arrive at the age of majority, but it is worthy of note that those cases, without exception, only gave attention to the interpretation of the statutes touching that ques-

tion. None of them involved the scope of the constitutional provision nor the question whether there was a conflict between the constitution and the statutes. This question, however, was considered in *Cross v. Benson,* 68 Kan. 495, where the owner of the homestead died leaving a widow but no children, and where it was held that the widow constituted the family of the owner and that the exemption continued in her so long as she occupied it. An appeal was there made to the effect of the statute of descents and distributions, but the court answered by saying:

"The statute of descents and distributions can shed no light upon the subject. The constitution creates the homestead. This court is the final interpreter of that instrument, and no legislative misconception of its scope, if any such should become manifest, can be permitted to diminish the field of its operation." (Page 504.)

In another part of the opinion it was said:

"A consideration of the origin and purpose of the homestead right and of its establishment in the constitution of this state will show that the provisions made in that document were intended to be complete, and that all legislative action in attaining the desired end was intended to be dispensed with." (Page 500.)

Further along in the opinion reference was made to the purpose of the homestead exemption as well as the limitations and duration of the homestead right, and it was said:

"But the saving of a home to the family free from alienation, without joint consent, and beyond the reach of process of the law, was of overshadowing importance. Therefore, while section 6 directs the legislature to provide for the protection of the rights of women in acquiring and possessing property, real, personal and mixed, separate and apart from their husbands, section 9 itself creates, limits and defines the homestead right." (Page 501.)

As to the effect of the statute upon the constitutional provision it was further said:

"Upon the matter of homestead not only is legislative aid dispensed with, but legislative interference is foreclosed. Without any statute upon the subject, no forced sale of any homestead occupied in the manner prescribed could be lawful, and no conditions may be imposed by statute upon the enjoyment of the right." (Page 502.)

Since the constitutional provision is complete in itself, and the homestead right conferred by it can not be restricted by statute, we must look to the constitution alone to find limitations on the enjoyment of the right. The limitations on the duration of the homestead right prescribed by the statute of descents and distributions are not found in the constitution. Under the constitutional provision the surviving widow is deemed to be the family of the owner, and so long as she remains in that position and continues to reside in the home the homestead right continues. If she vacates the home it loses its homestead character, but so far as the constitution is concerned the right persists so long as the widow's occupancy continues. The doctrine of *Cross v. Benson* was reaffirmed and extended in *Weaver v. Bank,* 76 Kan. 540, where it was held that when the homestead right has once attached it may persist in the surviving husband or wife alone, without regard to which spouse holds the legal title to the property or the time when the indebtedness to pay which it was sought to be sold was incurred. There seems to be a contention that the constitutional provision was liberally interpreted in the *Cross v. Benson* and *Weaver v. Bank* cases because the attacks on the homestead rights were made by creditors, but that provision makes no distinction between creditors and other claimants, nor does it make any distinction between sales on execution and other judicial sales. The provision is that the homestead "shall be exempted from forced sale under

Towle v. Towle.

any process of law." (Const. art. 15, § 9.) Compulsory partition contemplates not only the breaking up of the homestead, but in cases of partition the code specifically provides for the sale of the property if division can not be made. We all know that it is impractical to divide an ordinary city homestead, and many of the country homesteads are incapable of equitable division. Suppose a widow occupies a cottage built on a city lot twenty-five feet wide, which she has inherited in common with a number of children who have arrived at majority, and some of them bring a proceeding in partition: there can be no division except by means of a sale, and a sale to which she objects is certainly a forced sale. It will not do to limit the meaning of a forced sale to one on execution, because the constitution specifically exempts the homestead from any forced sale *under any process of law.* No broader language could have been employed, and it is certainly broad enough to include any judicial sale. Besides, the partition statute itself provides that the property shall be sold "in the same manner as in sales of real estate on execution." (Civ. Code, § 626; Gen. Stat. 1901, § 5113.) An order of sale in a partition proceeding is, in a sense, a special execution, and is as much within the prohibition of the constitution as an execution sale based on a creditor's judgment. In my opinion the homestead right remains in Mrs. Towle notwithstanding the children have reached majority, and she can not be disturbed in that right as long as she continues to occupy the property as a homestead. While a portion of the land was inherited by the children, it descended to them subject to the homestead interest. As was said in *Barbe v. Hyatt,* 50 Kan. 86, "so long as it retains its homestead character it can not be sold to pay ordinary debts, nor can there be a compulsory division and distribution. (Page 89.)

I am authorized to say that Mr. Justice Benson concurs in this dissent.