No. 21,131.

ROBERT C. POSTLETHWAITE, as Administrator, etc., *Appellee*,
v. FRANK P. EDSON and JESSIE L. MCCABE, *Appellants*.

OPINION ON REHEARING.

SYLLABUS BY THE COURT.

1. WILL—*Not a Conveyance or Alienation of Real Estate.* Rule followed
that a will is not a conveyance or an alienation of the real estate
described therein.

2. SAME—*Devise of Homestead—Rights of General Creditors.* "Cred-
itors," as the expression is used in section 11752 of the General Statutes
of 1915 concerning wills, means and includes general creditors.

Appeal from Shawnee district court, division No. 2; GEORGE
H. WHITCOMB, judge. Opinion on rehearing filed March 9,
1918. Former opinion adhered to. (For original opinion see
*ante*, p. 104.)

*Eugene S. Quinton*, of Topeka, for the appellants.

*T. F. Garver*, and *R. D. Garver*, both of Topeka, for the
appellee.

The opinion of the court was delivered by

WEST. J.: A rehearing was granted on the homestead ques-
tion only, and for the third time this controversy has received
somewhat unusual attention. (*Postlethwaite v. Edson*, 98 Kan.
444, 155 Pac. 802; Id. 102 Kan. 104.)

The right to will away real estate is not inherent, but is
purely a creature of legislation. The legislature may give, and
the legislature may take away.

"The legislature has plenary power to withhold or grant the right,
and, if it grants it, may make its exercise subject to such regulations and
requirements as it pleases." (40 Cyc. 997.)

When this matter was attended to in this state, it was en-
acted that one may give and devise property by will, "subject
nevertheless to the rights of creditors and to the provisions of
this act." (Gen. Stat. 1915, § 11752.) This is all the power
that has ever been given. The legislature has not added, and
the courts cannot add, thereto.

Section 9 of article 15 of the constitution sets apart certain
property as a homestead which "shall not be alienated without

the joint consent of the husband and wife, when that relation exists. . . ." Section 8 of the descents and distributions act (Gen. Stat. 1915, § 3831) sets apart one-half in value of the husband's estate of which the wife has made "no conveyance." In *Comstock v. Adams,* 23 Kan. 513, the sole question for consideration, as expressly stated in the opinion, was whether a will is a conveyance under the section last referred to, and after painstaking consideration the court unanimously held that it is not.

In *Vining v. Willis,* 40 Kan. 609, 20 Pac. 232, the point was whether a will is an alienation under the section of the constitution referred to, and after a still more elaborate discussion it was unanimously held that it is not, and *Comstock v. Adams* was followed with approval. In *Barbe v. Hyatt,* 50 Kan. 86, 31 Pac. 694, these two decisions were referred to and reaffirmed. The first of these was rendered in 1880, the second in 1889, and the third in 1892, and in all these years neither the people, the legislature, nor the courts have sought to change the rule of property thus embedded in the judicial system of this state. While loose expressions touching wills may be found, in no instance has this court decided anything to impair the force of this rule.

In *Martindale v. Smith,* 31 Kan. 270, 1 Pac. 569, it was said (p. 273) that when death occurs the title to the property of the person dying must be transferred to some person, that it cannot remain in the deceased, and the will simply designates where the title shall go.

In *Vining v. Willis,* 40 Kan. 609, 20 Pac. 232, it was said that a will never divests the owner of his property; that when the testator dies the devisee mentioned in the will takes the property by virtue of the statutes.

"It would not be the will, however, but death that would take the property *from* the testator; and it would be death, the statutes, and the will, all operating together, that would *confer* the property upon the devisee." (p. 611.)

Also,

"It is not the will alone, however, that determines where the title shall go, for the will operating alone would be powerless. It is the will, and death, and the statutes, operating together, that determine where the property shall go. Indeed, it is the statutes which give force and efficacy to all." (p. 612.)

After going over the matter again at length it was said:

"We think it appears from the statutes and from the decisions of the supreme court, that the legislature, the governor, and the supreme court, have always been of the opinion that the aforesaid constitutional provision has nothing to do with the question as to where the title to real estate, occupied as a homestead, shall go after the death of the owner of such real estate. It is evident that it has always been their opinion that the word 'alienated' as used in said provision means only a passing of some estate, title or interest in the homestead *from* the owner *during his lifetime,* and that it has no reference whatever to where his title or interest shall go after his death. These statutes and decisions have all the force and effect of a contemporaneous exposition of the true intent and meaning of this constitutional provision." (p. 620.)

A homestead always contemplates a place for the residence of a family, and its character as exempt property is derived only from the fact of such occupancy. In *Cross v. Benson,* 68 Kan. 495, 75 Pac. 558, the doctrine of family was expanded and applied to the case of a widow occupying the homestead after the death of her husband. This was carried still further in *Weaver v. Bank,* 76 Kan. 540, 94 Pac. 273, holding that the homestead right may persist in the survivor without regard to which held the legal title or the time when the indebtedness to pay which it was sought to be sold was incurred. Another modification was made in *Towle v. Towle,* 81 Kan. 675, 107 Pac. 228, two members of the court dissenting, wherein it was decided that a sale in partition is not a forced sale, and that distribution of the homestead may be had by the adult children while it is still occupied by the widow.

It is now argued that another enlargement should be made, and that the property in this case, not claimed to have been occupied by the present owners as a homestead, should be deemed exempt from the debt sought to be enforced against it. Of course this means a reversal of the decisions referred to and the establishment of the contrary rule. It is argued that creditors should be construed to mean those holding claims which could in the lifetime of the testator be enforced against the property. In other words, that the power to devise given by the legislature does not mean subject to the rights of creditors generally, or general creditors, which would be its natural meaning, but subject only to the rights of what might be called actual or potential lien holders, such as materialmen or those holding

claims for the purchase price. But the same legislature which thus restricted the making of wills enacted that the homestead should not be exempt from sale for taxes, improvements, purchase price, or liens given by consent of both husband and wife. Hence, creditors other than these must have been meant when using the phrase, "subject . . . to the rights of the creditors." Of course the phrase does not mean creditors whose eyes could not be turned toward the homestead, for all understand a homestead to be exempt from the claims of general creditors.

The phrase "subject . . . to the rights of creditors" must, according to the act on statutory construction, be construed according to the context "and the approved usage of the language." (Gen. Stat. 1915, § 10973, subdiv. 2.) If only actual or potential lien holders were intended there was no occasion to use this language at all, because they were already protected by the constitution and the statute as above shown. Hence, the argument that only creditors who could have looked to the homestead in the life of the intestate were intended, falls to the ground. In *Monroe v. May, Weil & Co.,* 9 Kan. 466, Mr. Justice Brewer, in speaking of the homestead right, said:

"A man may sell his homestead, and give good title, no matter how many judgments may be standing against him." (p. 475.)

Again,

"Nor is there anything in the transaction of which creditors can complain, or upon which they can base any equity. . . . If placing the title in the wife's name had removed so much property from the reach of their claims, it might have given them some pretense for insisting that no more property should be thus removed. But where the homestead is alike exempt, whether in the husband's or wife's name, we fail to see why placing it in the wife's name gives the creditors a right to call that a gift which the parties made a payment." (p. 476.)

It is quite manifest that in this discussion general creditors were the ones referred to. In *Colby v. Crocker,* 17 Kan. 527, the plaintiff, who had loaned the owner $800 for which he had no security, sought to require a mortgagee to first exhaust the homestead property. It was said:

"The homestead-exemption laws provide in effect that the homestead shall be exempt from all debts except for purchase-money, taxes, improvements, and liens given by the consent of both husband and wife. Now the plaintiff's claim does not fall within any of these exceptions." (p. 531.)

He, therefore, must have been a general creditor like the plaintiff in the case before us. In *La Rue v. Gilbert*, 18 Kan. 220, a judgment was obtained against a homestead owner whose family continued to occupy after his death. The holder sought to require the mortgagee of the homestead and other real estate to exhaust the homestead property first. This was refused. Mr. Justice Brewer said:

"In giving a mortgage on the homestead, the debtor waives this homestead right, but only to the mortgagee, and does not thereby open the door to other creditors, or increase their equities." (p. 222.)

In *Hixon v. George*, 18 Kan. 253, in discussing the claims of creditors who questioned the right of a husband to purchase land with his own money and put it in his wife's name and hold it as a homestead, it was declared that—

"It would have made no difference if the title to the property had been taken in George's name, and not in his wife's name. In either case, the property would have been exempt from the claims of any general creditor of either George or his wife." (p. 258.)

In *Sproul v. Atchison National Bank*, 22 Kan. 336, the court held:

"It is not illegal or fraudulent to hold property in a homestead exempt from the claims of general creditors; and the right of the homestead occupants to so hold such property is paramount to any right of any general creditor." (Syl. ¶ 2.)

In *Long Brothers v. Murphy*, 27 Kan. 375, it was held that an insolvent debtor having creditors pressing for the payment of their claims could not take goods purchased upon credit and exchange them for real estate, and hold it as a homestead against such existing creditors.

*Henderson v. Stetter*, 31 Kan. 56, 2 Pac. 849; *Stratton, Adm'r, v. McCandliss*, 32 Kan. 512, 4 Pac. 1018; *Frick Co. v. Ketels*, 42 Kan. 527, 22 Pac. 580; *Loan Association v. Watson*, 45 Kan. 132, 25 Pac. 586; *Wilson v. Taylor*, 49 Kan. 774, 31 Pac. 697; *Battey v. Barker*, 62 Kan. 517, 64 Pac. 79; *Cross v. Benson*, 68 Kan. 495, 75 Pac. 558; *Hopper v. Arnold*, 74 Kan. 250, 86 Pac. 469; *Sawin v. Osborn*, 87 Kan. 828, 126 Pac. 1074; *Rose v. Bank*, 95 Kan. 331, 148 Pac. 745; *King v. Wilson*, 95 Kan. 390, 148 Pac. 752; *Milberger v. Veselsky*, 97 Kan. 433, 155 Pac. 957; *Scott v. Rodgers*, 97 Kan. 438, 155 Pac. 961; *Fredenhagen v. Nichols & Shepard Co.*, 99 Kan. 113, 160 Pac.

997; and *Walz v. Keller*, 102 Kan. 124, 169 Pac. 196, all involved controversies between homestead claimants and general creditors, and no distinction can be found between those which did and those which did not involve wills.

In *King v. Wilson*, 95 Kan. 390, 148 Pac. 752, this is found:

"Was it necessary for the plaintiff to allege that the former judgment was not for an obligation contracted for the purchase of the premises, or for the erection of any improvements thereon? In suits for the protection of the homestead right it is not necessary to allege that the debt sought to be enforced against the property is not embraced within any of the exceptions." (p. 393.)

In *Cross v. Benson*, 68 Kan. 495, the following is found:

"And since the lots in question were continually impressed with the homestead interest of Sue S. Cross in the lifetime of her husband, at the date of his death and during the following years until her own demise, creditors enjoyed no rights to which such lots were subject or to which the making of a will was subject." (p. 506.)

There can be no question that in this expression general creditors were meant.

The trouble is that we have no homestead in this case—simply some real estate which ceased to be a homestead when it ceased to be occupied as such.

"The homestead interest is not an estate in land. . . . It is an exemption of land under stated conditions. If the conditions do not exist, or having once existed are at an end, the exemption ceases." (*Ellinger v. Thomas*, 64 Kan. 180, 185, 67 Pac. 529.)

If the homestead had at any time been abandoned by the widow of the judgment debtor, while such judgment was kept alive, it would at once have become subject to proper process for its payment. Had the makers of the will died intestate leaving no family in possession, the property would likewise have become subject to the rights of the judgment holder. The fact that the will designated to whom it should go is now sought to be exaggerated into a continued exemption in the hands of the devisees.

There is no potentiality in the oft used and frequently abused expression that the eye of the creditor need never be turned towards the homestead, to justify a holding that property continues to be a homestead after it ceases to be one.

But it is argued that the will and the death and the statute together vested the title in the defendants. It certainly cannot

be said that the death conveyed any property to any one, it simply removed the present owner from this life. Indeed, counsel himself says in his brief that "Death transfers nothing." It was long since settled law that the will did not and could not convey or alienate the land. The statute directed that it should go according to the desire expressed in the will—but only after probate—(Gen. Stat. 1915, § 11784), and while these three insufficient causes may when combined produce the effect of a conveyance—which neither could do alone—there is nothing in the situation to give the will a potency not accorded to it by the statute.

While the eye of the creditor need never be turned toward the homestead of the debtor, this situation continues only so long as it is a homestead. The only reason possible to be advanced for having a homestead provision is the protection of the family, and when, under our recent decisions, no member of the family continues to occupy it the homestead character *ipso facto* ceases. When the survivor in this case departed this life, no one was left in possession claiming or who could claim any sort of homestead rights. The devisees took by force of the statute, which compelled them to take subject to the rights of creditors who, having kept their judgment alive, had a right to look at this property as soon as it ceased to be a homestead, which it did upon the death of the survivor.

While the testators might during their occupancy of the homestead have conveyed it away by deed, and while the creditors might not be able to show that they were in any wise defrauded thereby, this was not done. It could have been done regardless of this will or any other will that might have been drawn, but is was not done. Instead of conveying the property away, the owners and occupiers chose to exercise their rights to designate where and how it should go at their death—only this and nothing more.

It is said that death is not an abandonment. Very well, but suppose the devisors had died simultaneously while in possession, whose homestead would it have been? It is not claimed to be the homestead of any one now, and it is not. The theory is advanced that by some sort of inherent efficacy the will carried over the exemption or the exempt quality of the land to the devisees. Why? Because a deed would have

done so, forsooth. But a deed would have evidenced a present and complete divestiture and investiture of title. A will is powerless to do this. Being a mere creature of statute, it can, at the utmost, result in designating the beneficiary, subject to the rights of the creditors of the devisor. Had this will expressly provided that it was made subject to the rights of the devisor's creditors, it would simply have contained what the statute writes into every will as effectually as if inserted by the maker himself.

"Legatees succeed to the estate of the testator as beneficiaries and objects of his bounty, and have no rights or equities whatever as against creditors whose debts existed in the testator's lifetime, and this applies even to a legacy based on a valuable consideration. It has even been considered that the creditors have a lien on property which the testator has specifically devised or bequeathed by his will." (40 Cyc. 2060.)

The statute has not said that the owner of a homestead may not convey it away by deed. This he may do, and, unless he thereby works a fraud upon his creditors, this right is in no wise impaired, but the statute has, in effect, said that he may not will his homestead away without preserving the rights of his creditors.

There is no possible reason in justice or equity why one should prefer a relative or a stranger who already has a homestead, and who owes him nothing, to a creditor who may have furnished him the very means of subsistence for years without return.

The answer to the contention that if a deed cannot defraud creditors a will cannot, is that the one is an inherently free act and the other a matter restricted and limited by law, whose limits cannot be passed without violating the law itself.

The point in *Cross v. Benson,* supra, was that, although the widow took under the will, subject to the rights of creditors, she could not be ousted of her occupancy so long as it continued, because such occupancy was paramount to her rights as devisee.

When the constitution was framed and adopted the country was new and land was of small value, but 160 acres of land and the improvements thereon in many cases now amount to a fortune of many thousands of dollars. If one owning such

a homestead now can, by being the beneficiary in the will of another homestead, hold such other property free from the debts of the testator, then it would seem, indeed, that the effect if not the object of the exemption law is not to protect the family, but to defeat debts.

The former decision and opinion are adhered to.

PORTER, J. (dissenting) : A rehearing was granted on the homestead question only, and the sole question is whether under the will the property occupied by the testators in their lifetime as a homestead passed to the devisees free from the debts of Willis Edson. The question now under consideration has never been squarely before this court, and we are confronted at the outset with the established proposition of law that the owner may sell and convey the homestead—may even make a transfer of the same with the avowed purpose of defeating his creditors, and such sale, conveyance or transfer will not render the property liable for his debts. In other words, it is absolutely exempt. The constitutional provision reads:

"A homestead . . . shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of the husband and wife, when that relation exists. . . . " (Art. 15, § 9.)

In *Monroe v. May, Weil & Co.,* 9 Kan. 466, it was said:

"The homestead is something toward which the eye of the creditor need never be turned. It is an element which may never enter into his calculations in his efforts to collect his debt. He may as well ignore that as he does now (except in cases of fraud) the body of the debtor." (p. 476.)

First, it is insisted the main question involved is no longer an open one in this state, for the reason that in a number of well-considered cases it has been held that a will is neither a *"conveyance"* as referred to in the statute, nor an *"alienation"* within the meaning of that word as used in the homestead clause of the constitution. Second, it is insisted that under the statute of wills the devisees in any will take the property "subject nevertheless to the rights of creditors." (Gen. Stat. 1915, § 11752.)

In support of the first of these contentions the cases of *Comstock v. Adams,* 23 Kan. 512, and *Vining v. Willis,* 40

Kan. 609, 20 Pac. 232, and other cases following and approving them, are relied upon.

There was, however, no principle of law actually involved in the Comstock case, the decision of which settled the question to be determined here. The statute there considered was the statute of descents and distributions (Gen. Stat. 1915, § 3831), giving the wife an inchoate interest to the extent of one-half of the husband's real estate owned by him at any time during the marriage, and particularly that portion of the section which reads, "That the wife shall not be entitled to any interest, under the provisions of this section, in any land to which the husband has made a *conveyance,* when the wife, at the time of the conveyance, is not or never has been a resident of this state." The point decided was that the will was not a "conveyance" within the meaning of this statute. To understand the force and effect of the decision, it is necessary to recall the purpose and intent of the statute which the court was then construing. It was an early-day statute enacted to meet peculiar conditions then existing, when the state was new and was rapidly being settled by men who came from distant communities. It was not uncommon then for a person to represent himself and to pass as single and unmarried, when, in fact, he had a wife living in some other state; sometimes the separation resulted from her refusal to reside in Kansas, sometimes from other reasons. The purpose of the statute was to facilitate the conveyance of land titles, and to protect those purchasing land by ordinary deeds of conveyance executed by one residing here and claiming to be single and unmarried, but who possibly had a wife living somewhere else. At the time it was enacted the means of communication with eastern settlements and distant states was slow and uncertain. There cannot be the slightest doubt as to the intention of the legislature; it was to relieve the purchaser from the difficulty of establishing a negative fact, that is, that the grantor had not a wife living elsewhere, instead of at the home of the husband, where a wife is usually found residing. To have held that the word "conveyance" was intended to embrace all kinds of conveyances, and to include a will, would have been manifestly contrary to the spirit and purpose of the statute. It could not have been the intention to protect

the rights of devisees under a will, because they need no such protection, since the wife is not a necessary party to the husband's will.  It is manifest that the word "conveyance" was, employed in the same sense as though the statute had been made to read *"deed or covenant of conveyance,"* because the legislature was enacting this particular clause for the sole purpose of dispensing with the necessity of the absent wife joining in the instrument.  All that was necessary in the decision was to determine whether the statute so intended, 'or, on the other hand, should be construed as giving the husband power to exclude by will (to which she had not assented) the rights given her in other statutes to receive after his death one-half of his property.  While the decision was placed mainly upon a consideration of the different manner in which title passes by will and by deed, and a narrow instead of a broad construction of the word "conveyance," nevertheless the court readily determined and, in part, rested its decision upon a consideration of the statute in connection with the provisions in the same and other statutes intended to protect the wife's rights in the husband's property, and held that the particular statute there involved did not give to the husband the power "to exclude by will, against the consent of his wife, her right to receive after his death one-half of his property, real and personal, although she may never have been a resident of Kansas."  (Syl. ¶ 3.) The entire opinion, so far as it bears upon the particular statute, reads:

"We do not think that Ira Comstock had the power to exclude by will, and against the consent of his wife, Avis F. Comstock, her right, after his death, to one-half of his property real and personal, although she may never have been a resident of Kansas; and we think the statutes conclusively settle this question.  Secs. 8, 17, 31, and 32 of the act relating to descents and distributions, Comp. Laws of 1879, pp. 379, 380; §§ 1 and 35 of the act relating to wills, (Comp. Laws of 1879, pp. 1001, 1004.)  The word 'conveyance' as used in the proviso of said § 8, clearly does not include a will.  A will is never a conveyance. A conveyance operates in the life-time of the grantor, while a will does not operate until after the death of the maker.  Of course, death transfers all property, and a will says where it shall go; but this does not render a will 'a conveyance,' 'which the husband has made.'  It is the death that transfers the property.  *Besides, if we should hold that the will and death taken together constitute 'a conveyance,' 'which the husband has made,' under said § 8, we would 'overturn other provisions of*

*the statutes contained in said §§ 17 and 85. This we cannot do."* [Italics added.] (p. 524.)

Section 17 of the statute of descents and distributions, to which the writer of the opinion referred, reads: "The widow's portion cannot be affected by any will of her husband, if she objects thereto. . . ." (Gen. Stat. 1915, § 3840.) And section 35 of the act relating to wills, to which he referred, reads: "No man, while married, shall bequeath away from his wife more than one-half of his property." (Gen. Stat. 1915, § 11790.)

By way of comment, and by what may, perhaps, be called a refinement of reasoning, the writer of the opinion drew a distinction between a will and a conveyance generally, based upon the difference in the manner by which wills and deeds operate to convey property. The same process of reasoning might lead to confusion according to the sense in which the word "deed" is used, by which we sometimes mean the written instrument itself, duly executed, but not yet delivered; without which it is not in one sense a deed, and yet in one sense it is. The register of deeds, for example, may be compelled at the instance of a third party to record it as a deed. He has no means of determining, nor any duty to determine, whether it has been delivered. When we speak of a deed as conveying property we assume that the instrument was not only executed, but was delivered. We might, but seldom do, go further and consider that the deed would not constitute a conveyance except by force of law authorizing property to be thus transferred; and that we have a "statute of conveyances," which regulates what estate is conveyed by different kinds of deeds. The statute not only provides what a deed shall contain, but declares what interest in real estate "passes" or is "conveyed" thereby (using these expressions interchangeably as does the statute of wills). Nor would accuracy of statement require us to say that the deed alone does not convey, but that the instrument, together with delivery, and the law, operating together, constitute it a conveyance. After having been fully executed, it may or may not be delivered. That rests upon a contingency. So, whether a will duly executed shall remain unrevoked is an uncertainty, which generally cannot be known or determined until the death of the

testator; but it requires a refinement of reasoning, which leads nowhere, to say that it is the death of the testator that conveys the property, or that it is death and the law which operate as a conveyance. Of course, there must be a law, statutory or otherwise, to enable the testator to dispose of his property by will, just as it required a law to enable him to own it and manifest dominion over it in the first place. The will cannot and was not intended to take effect until the death of the person who executed it. His death was certain; the time when it should occur was uncertain. When death occurred the will operated as a conveyance of the property to the devisee. In abstracts of title, as well as in common parlance, and in judicial decisions, it is said that property passed by the will, not by any statute, not by death—but by the will; and its terms are often pondered and considered by the legal profession and by the courts in an effort to discover what the testator intended to convey.

The court considered all parts of the particular statute in connection with other statutes and construed them *in pari materia*, in order to give all of them force and effect if possible. (*The State v. Young*, 17 Kan. 414; *In re Hall, Petitioner*, 38 Kan. 670, 17 Pac. 649; *Wenger v. Taylor*, 39 Kan. 754, 18 Pac. 911; *Gilbert v. Craddock*, 67 Kan. 346, 72 Pac. 869.) Another rule of construction which, if followed, would have led the court to the same result is, that the meaning of a statute is to be derived from its general terms and manifest purpose (*Gleason v. Sedgwick County*, 92 Kan. 632, 635, 141 Pac. 584), and another rule equally applicable is, that a thing which is within the letter but not within the manifest spirit of the act is not in contemplation of the law.

Indeed, the second ground upon which the decision was rested is itself conclusive, and, in my opinion, more in accord with sound reasoning than the first. The statement in the opinion that "a will is never a conveyance" was not necessary to the opinion, nor was it an accurate statement of the law. That the word "conveyance" was given in the opinion a technical and restricted meaning is quite clear, because of the express language employed by the legislature in the statute of wills, and the language used by the court in numerous deci-

sions in which it has been declared that a will does *"convey"* property and is a *"conveyance."* For instance:

The first section of the statute of wills authorizes the owner of real estate to "give and devise the same to any person by last will and testament." (Gen. Stat. 1915, § 11752.)

Section 33 provides that the will is not "effectual to, pass real or personal estate" (Gen. Stat. 1915, § 11784) unless admitted to probate or recorded.

In section 57 of the statute, the legislature expressly construes a will to be a *"conveyance."* The section reads:

"When lands, tenements or hereditaments are given by will to any person for his life, and after his death to his heirs in fee, or by words to that effect, the *conveyance* shall be construed to vest an estate for life only in such part taken, and a remainder in fee simple in his heirs." (Gen. Stat. 1915, § 11808.)

Section 59 reads:

"Every devise of real property in any will shall be construed to *convey* all the estate of the testator therein which he could lawfully devise, unless it shall clearly appear by the will that the testator intended to *convey* a less estate." (Gen. Stat. 1915, § 11810.)

In *Bennett v. Hutchinson,* 11 Kan. 398, Mr. Justice Brewer, after quoting the foregoing provision of the statute, said:

"It provides simply a rule of construction. It is like the clause in § 2 of the act concerning conveyances, . . . Its purpose, as all lawyers know, was to avoid the frequent controversies at the common law as to whether a devise passed only the life-estate or a fee simple." (p. 411.)

In numerous other sections of the statute of wills (35, 54, 58) the will itself is spoken of as passing the title.

In *Niquette v. Green,* 81 Kan. 569, 584, 106 Pac. 270, it was held that section 33 of the statute of wills "refers to wills generally which themselves pass title."

In *Holt v. Wilson,* 82 Kan. 268, 108 Pac. 87, it was said: " 'Where property is given in clear language *sufficient to convey an absolute fee,* the interest thus given shall not be taken away, cut down or diminished by any subsequent vague and general expressions.' " (p. 273.)

In *Breen v. Davies,* 94 Kan. 474, 146 Pac. 1147, it was held that "the word 'devise' is used in its popular sense, and relates to the disposal of personalty as well as real estate." (Syl. ¶ 1.)

There is not much force in the suggestion that the Comstock

case adopted a rule of construction which must be regarded as binding because the legislature has all these years permitted it to remain unchanged. The legislative declaration that "a will is a conveyance, and does convey" has also remained unchanged, and, as already noted, has often received the sanction of this court.

The opinion in the case of *Vining v. Willis*, 40 Kan. 609, 20 Pac. 232, was also written by Mr. Justice Valentine, and he quoted with approval much of the comment of the former in respect to the manner in which a will operates, by force of death and the statutes, to dispose of property. The only question involved, however, was the construction of the word "alienation" as used in the homestead provision of the constitution, which declares that the "homestead . . . shall not be alienated without the joint consent of husband and wife." The title to the homestead in that case was in Mrs. Vining. The land was occupied by herself and husband as their homestead. She died leaving no children and left a will devising one-half of the land to the defendants. The husband sued to recover the property, claiming the will was void because it amounted to an *"alienation"* of the homestead without his joint consent. The syllabus, after stating the facts, declares the law to be that she could by will and without the consent of her husband devise a one-half or any less interest in the land to a third person so that such a third person takes the interest thus devised. This was all that was decided, and it was only necessary to give a restricted, in place of a broad, general meaning to the word "alienation" as used in the constitution. Of course, the owner of land comprising a homestead may dispose of it by will the same as any other property he owns, and it would be absurd to contend that he cannot. The statute of wills gave Mrs. Vining the power to bequeath away from her husband one-half of her property.

The supreme court of Illinois had occasion to consider the same question, and readily disposed of the contention by holding it to be "preposterous" to say that the word "alienation" in a homestead exemption law was intended to be used in its broadest sense and to include a disposition by will. In the opinion it was said:

"It ['alienation'] must mean a transfer or conveyance; such an one as the signature and acknowledgment of a party are proper to effect, as the law requires those acts as conditions to the alienation of the home-

stead. If the homestead exemption applies to the case of the descent of property, then it may be released in the mode provided by the statute, as an act contemplates that it may be released. But it would be preposterous to suppose the legislature intended any such thing, as that the 'signature and acknowledgment of the wife' should apply to the case of the operation of the law of descent." (*Turner v. Bennett,* 70 Ill. 263, 267.)

In the Vining case the court, after referring to the statute of wills and construing it in connection with the homestead provision, very properly gave a restricted meaning to the word "alienation." The opinion expressly states that the word sometimes is used in a broader sense so as to "include the transfer of property by will and death and the statutes; and perhaps this use of the word in such a case is not inaccurate." (p. 614.)

The courts differ upon the question whether the word "alienation" properly includes a transfer by will or devise. In *Lane v. Maine Mutual Fire Insurance Company,* 12 Me. 44, 48, it was said, "The word alien or alienate extends not only to alienations of land in deed, but also to alienations in law. A transfer of title by devise, . . . would be as technically an alienation as a transfer by deed." (To the same effect see *Burbank v. Rockingham F. M. I. Company,* 24 N. H. 550.) The correct rule of construction, and the one upon which the decision in *Vining v. Willis,* supra, was, in part, rested, may be stated substantially as follows: The word "alienable" may be broad enough to include dispositions by will, when not otherwise restrained by the context. But, where used in the same connection with respect to the joint consent of husband and wife, it cannot be said that it was intended to embrace testamentary dispositions. (See Bouvier's Law Dictionary and cases cited.)

We are not concerned in the present case, however, with the definition of the word "alienation," and what I have said with respect to the case of *Vining v. Willis,* supra, is merely to demonstrate that, although it has been relied upon as an authority, and although it approved and followed some of the dictum in the Comstock case, the decision itself determined nothing involved in the question now under consideration.

It is said that we have no homestead question here because the defendants neither occupy the premises nor claim a homestead right in themselves. However, we have a most impor-

Postlethwaite v. Edson.

tant question to determine for the first time, which affects the character and extent of the homestead right under the constitution; and in determining it we must not lose sight of the long-settled policy of this court that the homestead law must be liberally construed for the purpose of carrying into effect its beneficent provisions.   Has the owner the right freely to dispose of it released from the claims of general creditors, or is his right to dispose of it free from the claims of general creditors restricted to a conveyance by deed, which must take effect in his lifetime and be accompanied by a surrender of possession and an abandonment of the premises as a homestead?   It is conceded that he has the right to dispose of it in any manner he may see fit during his occupancy; that he may sell it or give it away; that he may do this with the avowed purpose to prevent his general creditors from ever obtaining any liens upon it, and that a deed of conveyance will have that effect.

The constitution itself places no restriction upon the owner's right to dispose by will of the property held as a homestead. Indeed, the constitution does not in express terms declare that he may sell and convey it free from the liens of general creditors, but that is the construction the court has always given to the constitution.   The provision is, that the joint consent of the husband and wife is necessary to alienate or convey the homestead, when that relation exists.   There is no question here of alienation without joint consent, because the will under which the defendants acquired the property was a joint and mutual will executed by the husband and wife.   There being no restriction in the constitution as to the method by which a homestead may be conveyed or disposed of, how should the constitution be construed in determining whether the homestead guaranty includes the right to dispose of the property occupied as a homestead, by will or devise?   I think this can be readily answered by reference to a few fundamental rules of construction which the authorities agree may properly be applied in order to interpret the meaning of constitutional provisions.

"It is a fundamental canon of construction that a constitution should receive a liberal interpretation, especially with respect to those provisions which were designed to safeguard the liberty and security of the citizen."

(6 R. C. L. § 44, citing *Prigg v. Pennsylvania,* 16' Pet. 539, and other cases.)

"A constitutional guaranty of the enjoyment of life, liberty and property *carries with it all that effectuates and renders complete the unrestrained enjoyment of that guaranty.*" (6 R. C. L. § 243.)

"Another important canon of construction of a similar nature which is frequently applied to constitutions is that the limitations of a power furnish a strong argument in favor of the existence of that power," citing *Gibbons v. Ogden,* 9 Wheaton 1. (6 R. C. L. § 43.)

In the same section it is said that—

"An exception of any particular case presupposes that all those which are not included in such exception are embraced within the terms of a general grant or prohibition. The rule is likewise well established that where no exception is made in terms, none will be made by mere implication or construction."

Applying these general rules of construction, it is plain that in one respect alone does the constitution limit the power of the owner of the homestead as to its disposition. The express exception relates to one particular matter. The owner may not alienate the property without the joint consent of the husband and wife while that relation exists. All the other powers and rights which the owner has in the homestead and which "are not included in such exception" the owner still possesses, including the valuable right to dispose of it in any of the recognized methods by which the owner can convey or dispose of his real estate.

Since the constitution places no restriction upon the right to convey, and contains no limitation as to the method by which the land may be disposed of, the legislature is powerless to create such restriction or limitation. Because the statute of wills declares that the owner of property shall have the right to give or devise the same to any person, "subject nevertheless to the rights of creditors," it is argued that the power thus to convey is created, coupled with a limitation or restriction which applies to the right an owner of land comprising a homestead has to convey it by a will. But, if we were to give the construction contended for to the language "subject nevertheless to the rights of creditors," still if there was included in the homestead guaranty the right of the owner to dispose of it by any of the recognized methods by which the owner may dispose of real estate, then the legislature may not restrict

the right.    As said in *Cross v. Benson,* 68 Kan. 495, 506, 75 Pac. 558, "it can only be replied that the constitution is the paramount law and its mandates must be obeyed."   In the opinion in that case it was said, in reference to the power of the legislature to restrict the homestead right by the provisions of the statute of descents and distributions, or by the statute of wills:

"It is further claimed that the taking of title under the will of a homestead owner necessarily abrogates the homestead right because a person must devise his lands 'subject nevertheless to the rights of creditors.' (Gen. Stat. 1901, § 7937,) This proposition ignores the persistence of the exemption from forced sale, independent of changes in the title already illustrated in the case of descent.   In this case Sue S. Cross occupied the lots in question as a residence and as the family of the owner, H. C. Cross.   By the will of the owner the title was devised to her and she elected to take under the will.   But there was no hiatus in her occupation of the premises as a residence and as the family of H. C. Cross.   The homestead privilege was no more disturbed than it would have been had H. C. Cross deeded the lots to his wife in his lifetime and while she was occupying them as a homestead. . . .   And since the lots in question were continually impressed with the homestead interest of Sue S. Cross in the lifetime of her husband, at the date of his death and during the following years until her own demise, creditors enjoyed no rights to which such lots were subject or to which the making of a will of them was subject."   (p. 506.)

The opinion in *Cross v. Benson,* written by Mr. Justice Burch, has received recognition by other courts, text-writers and annotators as a leading case.   It is reported in 64 L. R. A. 560, and is cited in 21 A. & E. Ann. Cas. 248, in a note on "The right to make testamentary disposition of homestead," wherein it is said:

"The power of the owner of a homestead to dispose of the same by his will depends in most instances on the statutes of the particular state creating the homestead, since those statutes usually contain either an express prohibition against such testamentary disposition, or other provisions which are held to exclude the exercise of such power.   In the absence of a provision of this nature either in the constitution or statutes of the state, it is generally held that an owner may make a testamentary disposition of his homestead."

It is cited in 13 R. C. L. 647, in support of the rule that the use of merely formal phrases "will not make a devise of a homestead subject to the payment of the testator's debts.   To do this, the language employed must be unequivocal and imperative."

The supreme court of Minnesota cites *Cross v. Benson*, in *Larson v. Curran*, 121 Minn. 104, 44 L. R. A., n. s., 1177. There it was held that where a decedent, leaving no surviving spouse, child or issue of deceased child, disposes of his homestead by his last will, the devisee takes it free from claims of creditors of the decedent, unless the testator clearly indicates an intention that the homestead shall be liable to the payment of his debts; and a general direction by the testator in the will to pay all his just debts out of his estate, followed by the devise of the residue, is not sufficient to indicate such intention. The Minnesota court had previously, in *Eckstein v. Radl*, 72 Minn. 95, held that "a testamentary disposition of the statutory homestead, assented to in writing by a surviving husband or wife, will not render the property liable to the satisfaction of the debts of the testator." In that case the court said:

"We quite agree with the trial court that the devise of a homestead does not render it subject to any liability for the payment of a devisor's debts. When living, the owner may sell and convey the homestead, or he may make a fraudulent transfer of the same, and such sale, conveyance or transfer does not render the property liable for his debts. It is absolutely exempt." (p. 96.)

At the time the Eckstein case was decided, the first section of the Minnesota statute of wills was broader than ours. It read:

"Any person of full age and sound mind may dispose by will of all or any part of his property *subject to the payment of his debts. . . .*" (Gen. Stat. [Minn.] 1894, § 4423.)

Ours reads, "subject nevertheless to the rights of the creditors."

In the later case of *Larson v. Curran*, supra, it was said:

"That the homestead of the decedent is not, after his death, occupied as a homestead by a member of his family entitled to occupy it as such, does not affect its character as being exempt from liability for the decedent's debts." (Syl. ¶ 5.)

It was further said in the opinion:

"As stated by appellant, the only question on this appeal is whether, under the will of decedent, the property occupied by him in his lifetime as a homestead passed to respondent free from the debts of decedent. This is a question of the intention of the testator as expressed in his will. That he had the right to give up his homestead to his creditors, there can be no doubt. But he had the right to devise the homestead,

Postlethwaite v. Edson.

and the devisee would take it free from the claims of his creditors.   .   .   .
*Eckstein v. Radl,* 72 Minn. 95.   .   .   ."

"It is probably correct that an intention to devise the homestead will not be presumed when the law forbids a disposition thereof to which the surviving spouse has not assented in writing, or when there are children to whom it would descend in the absence of a devise.   But when there is no surviving spouse, and no surviving children, or issue of deceased children, there is no reason to adopt a strained construction of the will in order to arrive at a conclusion that the homestead is not devised."
(pp. 106, 107.)

The advancing policy of modern courts in construing the rights of the owner of a homestead was thus referred to in the opinion:

"The history of the constitutional and statutory provisions in this state in regard to the extent and character of the homestead exemption shows a steadily advancing policy in favor of the debtor, his family, and his grantee or devisee.   .   .   .   The whole trend of legislation on the subject of the descent of the homestead free from debts is indicative of a policy that creditors of the deceased shall have no recourse to the homestead, unless the debtor leaves no spouse or children, *and either makes no devise thereof,* or clearly indicates an intention to make a devise thereof subject to the claims of his creditors.   The general rule is that only property of the decedent that was unexempt in his lifetime is after his death subject to his debts,   .   .   .   whether it precedes or follows in the will a devise of the exempt property, does not have the effect of charging the homestead with the payment of debts.   .   .   .   The case of *Cross v. Benson,* previously cited, is strongly in point, and *not distinguishable from the case at bar.*   .   .   .   The fact that in *Cross v. Benson* there was a wife and children to whom the homestead would have descended in the absence of a will is not sufficient to distinguish that case from this in principle, or to detract from its authority."   (pp. 109, 110.)

In Wisconsin the homestead may be devised.   (*Johnson v. Harrison, Adm'r,* 41 Wis. 381; *Albright v. Albright,* 70 Wis. 528; *Whitmore and Another v. Hay,* 85 Wis. 240.)

In *Myers' Guardian v. Myers' Adm'r,* 89 Ky. 442, it was held that a testator may will his homestead and invest the devisee, though such devisee may be his wife or child, with the title the same as he could do by deed, and that the property would not be subject to his debts.   This was followed and approved in *Pendergest, &c., v. Heekin, &c.,* 94 Ky. 384.   The court of appeals of Kentucky, in *Schonbachler v. Schonbachler,* 22 Ky. Law Rep. 314, 317, 57 S. W. 232, 234, an opinion following the other cases, said:

"And we see no reason why he may not do practically the same thing

by will, because his creditors are prejudiced in one state of case no more than the other."

*Cross v. Benson* has been cited and approved in more than a dozen instances in our own decisions; and it furnished the basis for the decision in *Weaver v. Bank,* 76 Kan. 540, 94 Pac. 273, in which the case of *Ellinger v. Thomas,* 64 Kan. 180, 67 Pac. 529, was overruled. In that case Mrs. Weaver elected to take under the will of her husband devising a life interest in the homestead to her, and it was held, following the doctrine of *Cross v. Benson,* that she held the property exempt against her own creditors, as well as against the creditors of her husband's estate, and in the opinion it was. said, "where the property is sought to be taken to satisfy her debt, she must be deemed to be herself the owner." The opinion commented upon the fact that the constitution does not in terms declare that the homestead exemption shall survive the dissolution of the family, but it was held that the policy of the homestead law justified the court in giving that construction to the constitutional provision.

Our homestead law has been construed as giving to the owner the right to deal with it as exempt property, something to which the eye of the creditor, that is, the general creditor, "need never turn." The owner may sell and dispose of the homestead; he may make a gift of it to another, and the one to whom the title is given, or who becomes the purchaser, takes it free from the claims of the general creditors. The constitution does not in express terms give the owner the right to sell and convey it free from the claims of general creditors; neither does it in terms declare that the exemption shall survive the dissolution of the family, but by the aid of a liberal interpretation we have held that these rights are as firmly embedded in the provision as though they had been expressly declared. Moreover, why should it be held that the proviso in section 1 of the statute of wills, authorizing an owner of real estate to devise it to another "subject nevertheless to the rights of creditors," was intended to restrict the right of the owner of a homestead in devising it, and to save the rights of general creditors? It is certainly as fair an inference from the language used, that the intention was to make merely a general proviso saving whatever rights creditors might have

to look to the homestead. The constitution had already put creditors into two classes with respect to the homestead and declared that only those having mortgage liens or liens for purchase money or improvements have the right to look to the homestead, and had made no provision that the general creditor could do so, and the court has declared that they need never look in that direction. When the statute of wills was enacted the question as to just what the rights of general creditors in respect to the homestead are was something quite uncertain and as yet undetermined. It has required numerous decisions, and we are still endeavoring to determine the extent of their rights. It seems obvious that it requires no strained construction of the language of the statute to say that it was not the intention to give to the creditor something denied him by the constitution. As already observed, the expression is not as broad in effect as the language used in the Minnesota statute of wills, which read, "subject to the payment of his debts," and yet the supreme court of Minnesota held, upon the authority of their own decisions and the doctrine of *Cross v. Benson,* supra, that the devisee takes the property free from the claims of creditors.

The situation of the plaintiff and other general creditors in the present case is in no respect different from what it would have been if the owners of this real estate a few minutes before their death occurred had made a deed conveying the property to the devisees. Their creditors are prejudiced in one situation no more than in the other, in fact, they are not wronged in either, because they never had any right to look to this property for the payment of their debts.

One of the anomalous effects of the decision in the present case appears from a consideration of our decisions holding deeds, under certain conditions, not testamentary in character. Under these decisions Willis Edson and his wife might have conveyed the homestead to their children with a condition that the deed should not take effect until the death of both grantors; and had their occupancy of the homestead continued until their death the property would have passed to the grantees free from claims of the creditors. All that would have been necessary was for the grantors to hand the deed to a third party with instructions to deliver it at their death

to the grantees. (*Nolan v. Otney*, 75 Kan. 311, 89 Pac. 690.) And this would be true, even though the grantees were not aware that the deed had been executed. (*Gideon v. Gideon*, 99 Kan. 332, 161 Pac. 595.) Does it not seem like giving force to a mere quibble of words and losing sight of the substance of things to say that we are bound by the comment in the Comstock case respecting the different manner in which title to real estate passes under a will and under a deed; language which we have seen was not necessary to the decision?

There was no hiatus, no space of time, of which courts or the law can take any cognizance, and during which the lien of the judgment of the plaintiff could attach to the property. It was occupied as a homestead until the death of the last of the two testators. The moment the breath left her body the title passed by the will to the devisees. Occupancy as a homestead warded off the lien until death occurred, and then the title had passed. As said in the opinion in *Martindale v. Smith*, 31 Kan. 270, 1 Pac. 569, "At the death of the owner of real estate the title must go somewhere, and we know of no law which prevents the owner from saying by will where it shall go." (p. 272.) In that case the only question was whether a husband can devise by will the other half interest in his homestead. It was held that he could.

This court has established the precedent that in construing the homestead law the policy of giving it a liberal construction is of paramount importance to the doctrine of *stare decisis*. In *Weaver v. Bank*, supra, Mr. Justice Mason, speaking for the court, used this language:

"The court is of course always reluctant to treat as still open a question which it has once definitely passed upon. But in matters involving the interpretation of the constitution it is usual and proper to give less force to the doctrine of *stare decisis* than in other cases." (p. 544.)

The majority opinion, employing what seems to me a narrow rather than a liberal interpretation, gives to the homestead provision a meaning which deprives the homestead owner of a valuable privilege that has been declared to be included within the general constitutional guaranty of the right of property, which "carries with it all that effectuates and renders complete the unrestrained enjoyment of that guaranty." (6 R. C. L. § 243, and cases cited.)

The saying that "constitutions march," like the statement that the sun moves, is incorrect. Speaking in strictness, a constitution until amended as provided by its terms remains what it was originally. The understanding of the full scope and effect of its general provisions is often a matter of growth and development, and it is the conception of what its true meaning is that may be said to march. The constitution speaks in general language, and avoids detail; it is merely the general framework upon which rest all the rights and all the privileges it guarantees, as well as all the duties and all the obligations imposed by it. In ascertaining the scope and effect of the constitution the court may call to its aid its knowledge of modern social conditions and is not restricted to the tallow candle in use at the time the instrument was adopted. Until repealed or amended by the legislature, statutes stand immovable; constitutions march, aided by judicial interpretation necessarily employed to give full force and effect to the rights and privileges guaranteed by their general terms. Take as a concrete example the constitutional provision for establishing the district court (Art. 3, § 5) which provides that in each judicial district "there shall be elected . . . a district judge." It never occurred to the framers of the constitution that the time might come when the population of a district or of a single county would increase to such an extent as to require more than one judge of the court to transact the business. A literal and strict construction of the language of the constitution (insisted upon by many able members of the legal profession), would have made a constitutional amendment necessary to meet the changed conditions and necessities. But, giving a liberal and broad construction to the constitution in order to carry into effect its general purpose, the court had no difficulty in deciding that the legislature might provide for a district court in a single county which should consist of a number of divisions, each presided over by a district judge, and that each of the several judges should be "a judge of the district court." (*State v. Hutchings,* 79 Kan. 191, 98 Pac. 797.) A still better concrete example may be found in the broad and liberal construction given by the supreme court of the United States to what is known as the "commerce clause" of the federal constitution. No one would have the hardihood to contend for a

moment that when they gave to congress the power "to regulate commerce between the states," the framers of the constitution had the most remote conception of the vast extent of power granted by the language as construed in hundreds of decisions of the federal supreme court.

In adopting the homestead provision, the framers of our constitution never got beyond the idea of preserving to the head of the family a refuge from the assaults of general creditors, while the family occupied the premises with him. In interpreting the homestead provision the court, however, has given it a broad and liberal construction in order to carry into effect the general purpose of the framers, and has extended the right to the widow and to the members of the family after the death of the owner. The right has thus been extended by a gradual process which has been brought about as the net result of judicial interpretation in cases involving many different situations and conditions. In *Shirack v. Shirack*, 44 Kan. 653, 24 Pac. 1107, it was held that a minor child who was the only heir of his widower father, and living with him on a homestead, was entitled to claim the benefit of the homestead after the father's death, although living elsewhere with his guardian. The progress or march of the constitution halted at times. In *Battey v. Barker*, 62 Kan. 517, 64 Pac. 79, the court gave a narrow construction to the homestead clause, and held that the homestead right would not persist for the benefit of an unmarried daughter of adult years who resided on a homestead with her father until his death, he dying intestate and leaving her his sole heir and she continuing to occupy the premises as her home. The land was held subject to sale for the debts of the father. The uncertainty as to the extent of the homestead right prevailing at the time the decision was written is apparent in the following statement of Mr. Justice W. R. Smith in the opinion:

"We are not called upon to decide, nor do we find that the question has been passed upon by this court, that where the head of a family residing on a homestead loses his wife and children, the right once fixed by law to hold the homestead as against creditors is divested by such circumstance." (p. 521.)

The court was called upon in *Cross v. Benson* to consider the homestead guaranty as affecting a situation to some extent unique, and the decision cast additional light upon the meaning

of the constitution. It marks another stage in the progress of the constitution, or rather in the conception of what the homestead provision means. Later, because the court was satisfied with the decision, it was made the basis for an express declaration in *Weaver v. Bank,* supra, overruling *Ellinger v. Thomas,* and in my opinion it went far beyond the decision in *Battey v. Barker,* supra, and in effect has overruled the doctrine of that case.

It requires the exercise of but a modicum of the liberality employed by the highest court in the land in the interpretation of the commerce clause of the federal constitution, for this court to hold that the valuable right of the owner of a homestead to dispose of it in any of the recognized methods of conveying real estate, was included in the constitutional provision, since the only exception to his right to convey does not include a prohibition against disposing of it by will; and, following the logic of *Cross v. Benson,* and the force and effect given to it by the Minnesota court, to say that since the right to dispose of the homestead by devise or will was not taken from the owner by the constitution, the legislature has no power to do so, if that were held to be the intention of the provision of section 1 of the statute of wills.

As regards the intention of the legislature, I think the majority opinion not only places too much emphasis upon the proviso in section 1 of our statute of wills, but assumes that it was intended specially to limit the transfer of the homestead by will, although the homestead is not specifically mentioned. Only eighteen states of the Union have in their statute of wills a provision declaring that property devised by will shall be subject in some manner to the debts of the testator. Among the thirty states which have no such provision are those comprising the thirteen original colonies and the states created from their territory. Notwithstanding the absence of such a provision in thirty states, it cannot be doubted that the law is the same in all the forty-eight states, and that in all of them property devised by will is subject generally to the rights of creditors. It amounts to this: the law is the same whether the statute of wills contains such a provision or not. Things that are equal to the same thing are equal to each other. The language of the proviso in our statute of wills adds nothing to the force or effect of the statute nor to the rights of creditors.

Without such a provision in the statute the owner of property conveyed it by will, subject generally to his debts; the statute makes no reference to a homestead, and it seems obvious that the language was not intended and should not be construed to deprive the owner of a homestead of the right to convey or dispose of it by will just as he could have conveyed it by deed. In the words of the supreme court of Kentucky, in *Myers' Guardian v. Myers' Adm'r*, supra:

"And it would, therefore, seem no more injury to creditors, nor in contravention of the purpose and reason of the homestead law, for the debtor to pass the title by will than by deed; for if, as has been held, he can by deed, and for merely love and affection, convey the remainder interest to his children, reserving a life estate to himself, we see no reason why he may not do practically the same thing by will, because his creditors are prejudiced in one state of case no more than the other."

After the fullest consideration of the importance of the question involved, I have reached the conclusion that the devisees under the will take the land free from the claims of the general creditors.

I am authorized to say that Mr. Chief Justice JOHNSTON and Mr. Justice BURCH join in this dissent.