Lewis v. Lewis.

---

No. 21,935.

EMERY H. LEWIS, MERIAM B. LEWIS and CELESTINE R. LUTZ *Appellees,* v. MATTIE M. LEWIS, *Appellant.*

### SYLLABUS BY THE COURT.

1. JOINT WILL—*By Husband and Wife—Not against Public Policy.* A mutual and reciprocal joint will, made by a husband and his wife, in which they give a life estate in their property to the survivor and the remainder to their children, is not opposed to public policy.

2. SAME—*May Not be Revoked after Death of Wife.* A mutual and reciprocal joint will, made by a husband and his wife, cannot, after the death of the wife and the acceptance of benefits under the will by the husband, be revoked by his subsequent marriage.

3. SAME—*Former Opinion Not in Conflict Herewith.* The rule announced in *Postlethwaite v. Edson,* 102 Kan. 104, 171 Pac. 769, Id., 102 Kan. 619, 171 Pac. 773, cannot be extended so as to render nugatory the remainder created by a mutual and reciprocal joint will made by a husband and his wife.

Appeal from Jewell district court; RICHARD M. PICKLER, judge. Opinion filed February 8, 1919. Affirmed.

*W. R. Mitchell,* of Mankato, for the appellant.

*J. R. White,* of Mankato, *I. M. Mahin,* and *F. W. Mahin,* both of Smith Center, for the appellees.

*W. D. Vance,* and *R. E. McTaggart,* both of Belleville, as *amici curiæ.*

The opinion of the court was delivered by

MARSHALL. J.: The defendant appeals from a judgment decreeing that the plaintiffs were the owners in fee simple of certain real property and quieting their title thereto. The contest arose over the following mutual and reciprocal joint will:

"I, T. W. Lewis, and I, Betsy A. Lewis and each of us and both of us being of sound mind and memory and realizing the uncertainty of life and the certainty of death and wishing to direct how our property shall be distributed on our death, do hereby make, publish and declare this to be our last will and testament. Made at Esbon, Kansas, this 28th day of April, A. D. 1909, hereby revoking all former wills by us or either of us made.

"*First.* It is the will of each one of us and of both of us that our just debts and funeral expenses be paid.

"*Second.* It is the will and desire of each of us and the mutual wish and desire of both of us that on the death of either of us all the property of the deceased party, whether real, personal or mixed, shall descend to and become the sole and separate property of the surviving party for his or her use and benefit so long as the survivor shall live.

"*Third.* It is the will and desire of each of us and our mutual desire that on the death of whichever one of us that survives the other that all of our property of whatsoever kind or nature, descend to and become the property of our beloved children, Emery H. Lewis, Meriam B. Lewis and Celestine R. Lutz, share and share alike, except the two hundred dollars provided for and devised in section four of this will.

"*Fourth.* It is the will and desire of each of us and our mutual desire that our beloved grandson, Tolbert William Lutz, son of our deceased daughter Amanda L. Lutz, have and receive the sum of two hundred dollars, on the death of the one of us who survives the other and I, T. W. Lewis and I, Betsy A. Lewis each for ourselves do hereby give, devise and bequeath to our beloved grandson Tolbert William Lutz the sum of two hundred dollars on the death of the one of us surviving the other.

"*Fifth.* I, T. W. Lewis and I, Betsy A. Lewis each for ourselves do hereby give, devise and bequeath to the other all our property whether real, personal or mixed for his or her use and benefit so long as he or she may live and we hereby further declare, give, devise and bequeath the fee in all our property of whatsoever kind or nature to our beloved children Emery H. Lewis, Meriam B. Lewis and Celestine R. Lutz (nee Lewis) share and share alike, on the death of the one of us who survives the other. We do not intend to devise and this bequest is made with the specific intention of not including the sum of money hereinbefore willed to our beloved grandson Tolbert William Lutz, in part four of this will."

The court made findings of fact among which were the following:

"1. On or about the 28th day of April, 1909, T. W. Lewis was the

husband of Betsy A. Lewis and was the father of all of the plaintiffs, and the said Betsy A. Lewis was the mother of all of the plaintiffs.

"5. On the death of Betsy A. Lewis, which occurred in September, 1912, T. W. Lewis took charge and exercised dominion over all of the property above described, and received the rents and benefits accruing from it.

"6. On the 29th day of July, 1914, the said T. W. Lewis was united in marriage to the defendant Mattie M. Lewis.

"8. The said T. W. Lewis departed this life on November 16th, 1916.

"14. T. W. Lewis never accounted to any one for any rents or benefits which he may have received or realized in the use or management of the property which had belonged to Betsy A. Lewis.

"18. After the instrument was probated, as above recited, the defendant was cited by the probate court of Jewell county, Kansas, to appear and make her election as to whether she would take under the will or under the laws of descents and distributions.

"19. In response to such citation she appeared in the probate court of Jewell county, Kansas, and made her election to take under the laws of the state regulating descents and distributions and not under the will.

"21. After the death of Betsy A. Lewis the plaintiffs expressed the wish of being permitted to enjoy the use of the farm, or a part of the farm, owned by Betsy A. Lewis in her lifetime, and the said T. W. Lewis so informed some of his acquaintances, but stated that the children need not worry because they, meaning himself and Betsy A. Lewis, had made provision for the children in their will, and thus recognized the will as such after the death of Betsy A. Lewis, although shortly before his second marriage he told the sister of the defendant that if the defendant came into his home, she would come in just as his wife went out, meaning to give the sister of the defendant to understand that if he married the defendant she, the defendant, would enjoy all the rights and privileges his first wife had."

The defendant claims under the statute of descents and distributions, and argues that the will is against public policy; that, so far as T. W. Lewis was concerned, the will was revoked by his marriage to the defendant; and that the will was not a conveyance and, therefore, that the defendant, under her election, inherited one-half of the property owned by T. W. Lewis. Each of these propositions will be noticed.

1. It is not apparent why such a will, executed by a husband and his wife, making provision for themselves during their lifetime, and the life of the survivor, and giving the property to their children after their death, is against public policy. That policy ought to be favorable to such wills. In *Carle v. Miles*, 89 Kan. 540, 132 Pac. 146, this court discussed this subject and said:

"Mutual wills made in pursuance of an agreement in consideration of

reciprocal gifts or devises are not opposed to public policy nor contrary to the statutes of this state." (syl. ¶ 2.)

The validity of such wills has been either expressly or impliedly recognized in *Meador v. Manlove,* 97 Kan. 706, 156 Pac. 731; in *Postlethwaite v. Edson,* 98 Kan. 444, 155 Pac. 802; Id., 102 Kan. 104, 171 Pac. 769; Id., 102 Kan 619, 171 Pac. 773.

But the defendant argues that, if such wills are upheld, the surviving spouse will be left dependent on those to whom the remainder is given. That may be true, but if an arrangement, such as the one now before the court, is voluntarily made, there is no more reason for saying that it is opposed to public policy than there would be for saying it is opposed to public policy if the arrangement had been made by deed executed and delivered in the lifetime of the parties thereto. There is not much difference between such an arrangement by deed and the one now under consideration.

2. The principal contention of the defendant is that the will, so far as T. W. Lewis is concerned, was revoked by his subsequent marriage. To support that contention the defendant argues that, if the will stands, the statutory provision made for her benefit, as the surviving wife of T. W. Lewis, is defeated; that her election to take under the law is of no avail; and that the promise made by T. W. Lewis to the defendant's sister before the marriage is defeated.

The widow's right under the statute of descents and distributions, whether the husband dies intestate, or whether he makes a will and she elects to take under the law, attaches to one-half in value of all the real estate in which he, at any time during the marriage, had a legal or an equitable interest. (Gen. Stat. 1915, § 3831.) Her right does not attach to any property to which the husband held the legal title but which in equity belonged to others. (*Dillon v. Gray,* 87 Kan. 129, 123 Pac. 878.)

The representation made by T. W. Lewis to the defendant's sister, "that if the defendant came into his home, she would come in just as his wife went out," was made after the will had been executed, after the first wife of T. W. Lewis had died, after he had accepted the benefits conferred by the will, and after the interests of the plaintiffs had attached to the land in controversy. Unless T. W. Lewis had the power to revoke

Lewis v. Lewis.

the will after these things had transpired, nothing that he did could in any way change the rights of the plaintiffs.

Where a property owner about to be married makes disposition of that property in fraud of the rights of the intended spouse, the courts will set aside that disposition. (*Butler v. Butler and Austin,* 21 Kan. 521; and *Green v. Green,* 34 Kan. 740, 10 Pac. 156.)   But a disposition of property made long prior to contemplation of a marriage, and while another marriage relation exists, cannot be in fraud of the rights of a second spouse.

Another argument advanced to support the theory that the will was revoked is that, because T. W. Lewis, after the death of Betsy A. Lewis, conveyed to third parties a part of the land that had been owned by him, he repudiated the will, or did not recognize it as binding on him.   Those conveyances may have been wrongful, but that question is not before the court, and need not be decided.   What has been said concerning the representation to the defendant's sister applies with equal force to this argument.

All the supporting argument of the defendant fails, and she is left with the argument that the second marriage of T. W. Lewis, without any other act, revoked his will.   It is not necessary to decide that question at this time; but for the purpose of argument, it may be conceded that marriage does revoke a will previously made, where it can be revoked.   If it cannot be revoked, it must be because the instrument partakes of the nature of both a will and a contract.   The defendant says that there was no evidence to show that T. W. Lewis and Betsy A. Lewis ever entered into any contract to make the will, and that there was no finding of the court that such a contract was made.   How could such a will be voluntarily executed if there was no agreement or understanding that it would be made? The will itself, its terms, and its execution, are evidence that such a contract was made. (*Nelson v. Schoonover,* 89 Kan. 388, 392, 131 Pac. 147; *Baker v. Syfritt,* 147 Iowa, 49; *Bower v. Daniel,* 198 Mo. 289, 320; *Frazier v. Patterson,* 243 Ill. 80; *Campbell v. Dunkelberger,* 172 Iowa, 385, 390; *Larrabee v. Porter,* 166 S. W. 395 [Tex. Civ. App. 1914].)

There is some confusion in the authorities concerning the

power of one of the parties to a mutual and reciprocal joint will to revoke it; but the rule supported by the better reasoning and by the weight of authority is that if such a will has been made and one of the parties thereto dies and the other accepts benefits thereunder, the survivor cannot thereafter revoke it. The authorities last cited fully support this rule.

At the time of his second marriage, T. W. Lewis did not have power to revoke the will on his part so as to render it inoperative after his death. Even if the testamentary part of the instrument now under consideration had been revoked, the contractual part could be enforced by the plaintiffs. (*Newton v. Lyon*, 62 Kan. 306, 62 Pac. 1000; *Anderson v. Anderson*, 75 Kan. 117, 88 Pac. 743; *Gemmel v. Fletcher*, 76 Kan. 577, 92 Pac. 713; *Bless v. Blizzard*, 86 Kan. 230, 120 Pac. 351; *Dillon v. Gray*, 87 Kan. 129, 123 Pac. 878; *Nelson v. Schoonover*, 89 Kan. 388, 131 Pac. 1183; *Meador v. Manlove*, 97 Kan. 706, 156 Pac. 731, closely parallel to the present case; *Cathcart v. Myers*, 97 Kan. 727, 156 Pac. 751.)

3. The defendant argues that a will cannot operate as a conveyance of land, and cites *Postlethwaite v. Edson,* 102 Kan. 104, 171 Pac. 769. Three opinions were written in that case: the first was published in 98 Kan. 444; the second, in 102 Kan. 104; and the third, in 102 Kan. 619. The controversy there concerned the homestead character of devised land occupied by remaindermen. The land had been occupied by the testators as their homestead. Creditors were seeking to subject the land to the payment of the testators' debts. The ramaindermen claimed that the land came to them by conveyance from testators, who then occupied it as a homestead, and was, therefore, not chargeable with the testators' debts. The ruling was that the will did not convey to the remaindermen the homestead character of the land. That is not the present case; and *Postlethwaite v. Edson* cannot be extended to cover it.

The judgment is affirmed.